# Exhibit A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| In re: | § | Case No. 23-51715-JAW |
| | § | |
| El Dorado Gas & Oil, Inc., | § | Chapter 11 |
| | § | |
| Debtor. | § | (Jointly Administered) |

### MOTION TO ENFORCE SALE ORDER [DKT NO. 1104] AND TO COMPEL COMPLIANCE WITH PURCHASE AND SALE AGREEMENT AND, ALTERNATIVELY, APPLICATION FOR ADMINISTRATIVE EXPENSE

COMES NOW GrayStreet Credit, LLC ("Buyer"), by and through its undersigned counsel, and files its Motion to Enforce the Sale Order [Dkt No. 1104] and to Compel Compliance with Purchase and Sale Agreement [Dkt No. 1158-1] ("PSA") and, alternatively, Application for Administrative Expense. In support, Buyer respectfully states as follows:

### REQUEST FOR RELIEF

1. Buyer requests relief from the Court due to the Trustee's failure to pay GrayStreet its Breakup Fee[1] and Expense Reimbursement[2] totaling $505,000.00 in violation of the Court's *Order (A) Authorizing and Approving (1) The Sale of the Mecom Oil and Gas Assets of El Dorado Gas & Oil, Inc., Hugoton Operating Company, Inc. and Bluestone Natural Resources II-South Texas, LLC, Free and Clear of All Liens, Claims, Encumbrances and Other Interests and (2) The Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection*

---

[1] The Breakup Fee is defined in the PSA as follows: "3% of cash proceeds received in a sale to an entity who is not the Buyer of any of the Property . . . ." PSA [Dkt No. 1158-1] at 38, § 6.6.

[2] The Expense Reimbursement is defined in the PSA as follows: "an amount not to exceed One Hundred Fifty Thousand Dollars ($150,000.00) of Buyer's out-of-pocket fees and expenses incurred in connection with this Agreement and other agreements, pleadings, documents, hearings, discovery, and transactions related hereto . . . , in proportion to the portion of the Purchase Price for the Package not sold to Buyer bears to the total Purchase Price . . . ." PSA [Dkt No. 1158-1] at 38, § 6.6.

1

*Therewith, and (B) Granting Related Relief* [Dkt No. 1104] (the "Sale Order") and Section 6.6 of the PSA.

2.      Alternatively, GrayStreet requests approval and allowance of an administrative expense for the Breakup Fee and Expense Reimbursement in the aggregate amount of $505,000.00 pursuant to 11 U.S.C. § 503(b)(1)(A).

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(1) and 1334.[3]

4.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).

5.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTS AND PROCEDURAL HISTORY

6.      On December 22, 2023, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  *See* [Dkt No. 1].

7.      On February 2, 2024, Dawn Ragan's appointment as Chapter 11 Trustee was approved.  *See* [Dkt No. 208].

8.      On January 23, 2025, the Court entered its Sale Order, which approved Buyer's purchase of certain assets of the Debtor pursuant to the PSA dated December 20, 2024.  Sale Order [Dkt No. 1104]; PSA [Dkt No. 1158-1].  The PSA, which was approved by the Sale Order, provided for Buyer's purchase of certain assets from the Debtors' estates and the assumption and assignment of various contracts.  *See* Sale Order [Dkt No. 1104] at 21.

---

[3] The Court retained exclusive jurisdiction over the interpretation and enforcement of the Sale Order and PSA, including exclusive jurisdiction to "resolve any disputes arising under or related to the Purchase Agreement, the Sale Transaction, or the Buyer's peaceful use and enjoyment of the Property . . . ."  Sale Order [Dkt No. 1104] at 37, ¶42.

9.      The PSA entitles Buyer to the Breakup Fee and Expense Reimbursement totaling $505,000.00, which remains unpaid.  *See* PSA [Dkt No. 1158-1] at 38-39, § 6.6.

10.      Section 6.6 of the PSA provides as follows:

6.6      **Expense Reimbursement & Break Up Fee**. In the event the Bankruptcy Court approves an alternative transaction and the alternative transaction closes, and such alternative transaction is not the result of Buyer's breach under this Agreement, Buyer shall be entitled to payment by Seller of the aggregate of (i) an amount not to exceed One Hundred Fifty Thousand Dollars ($150,000.00) of Buyer's out-of-pocket fees and expenses incurred in connection with this Agreement and other agreements, pleadings, documents, hearings, discovery, and transactions related hereto (the "*Expense Reimbursement*"), in proportion to the portion of the Purchase Price for the Package not sold to Buyer bears to the total Purchase Price, (ii) receipt of the Performance Deposit from the Escrow Agent, and (iii) 3% of cash proceeds received in a sale to an entity who is not the Buyer of any of the Property ("*Breakup Fee*", and together with the Expense Reimbursement and, the "*Stalking Horse Protections*").  Buyer shall provide evidence of all such fees and expenses to Seller.  If there is a dispute over the Expense Reimbursement, one or both of the Parties may bring the dispute to the Bankruptcy Court to resolve the Dispute.

6.6.1    Seller's obligations to pay the Expense Reimbursement and Breakup Fee shall survive termination of this Agreement.  Seller shall pay the Expense Reimbursement and Breakup Fee to Buyer within seven (7) days after the close of an alternative transaction.

6.6.2    Buyer's right to payment of the Expense Reimbursement shall constitute an administrative expense in the Bankruptcy Case pursuant to Section 503(b) or 507(a)(1)(2) of the Bankruptcy Code with priority over any and all administrative expenses of a kind specified in sections 503(b) and 507(a) of the Bankruptcy Code and senior to all other super priority administrative expenses in the Bankruptcy Case.

6.6.3    Each Party acknowledges that the agreements contained in this *Section 6.6* are an integral part of this Agreement and that, without these agreements, the other Party would not enter into this Agreement.

6.6.4    Buyer represents to Seller that this *Section 6.6* is a condition precedent to Buyer's execution of this Agreement and is necessary to ensure that Buyer will continue to pursue the proposed acquisition of the Property, and Seller acknowledges that the Expense Reimbursement, if payable hereunder, (i) is of substantial benefit to Seller's estate by, among other things, establishing a bid standard or minimum for other bidders and placing estate property in a sales configuration mode attracting other bidders to a potential auction, and (ii) is in his

3

opinion reasonable and appropriate, including in light of the size and nature of the sale of the Property by Seller to Buyer contemplated hereby and the efforts that have been or will be expended by Buyer, notwithstanding that such sale is subject to higher and better offers, and (iii) was negotiated by the Parties at arm's-length and in good faith. Seller further covenants and agrees that, after the entry of the Sale Order, the terms of any reorganization or liquidation plan they submit to the Bankruptcy Court, or any other court for confirmation or sanction, shall not conflict with, supersede, abrogate, nullify or restrict the terms of this Agreement, or in any way prevent or interfere with the consummation or performance of the Agreement and Transactions.

PSA [Dkt No. 1158-1] at 38-39, § 6.6.

11.     Despite closing on the alternative transactions for the sales of the AWP Field and South Texas Assets to Varas Energy, LLC, the Trustee has expressly refused to pay GrayStreet the Breakup Fee and Expense Reimbursement. *See generally* Notice of Purchase and Sale Agreement and Closing of Sale of AWP Assets [Dkt No. 1157]; Notice of Purchase and Sale Agreement and Closing of Sale on South Texas Assets [Dkt No. 1159].

**ARGUMENT**

**I.     The Court should order the Trustee to comply with the PSA and pay GrayStreet the Breakup Fee and Expense Reimbursement.**

12.     The Sale Order was in effect as of January 23, 2025. The sale of the Mecom Ranch Assets pursuant to the PSA closed on January 31, 2025, and the Trustee's sale of the AWP Field and South Texas Assets to Varas Energy, LLC also closed on January 31, 2025. *See* Sale Order [Dkt No. 1104]; Notices of Closing [Dkt No. 1157] at 2; [Dkt No. 1158] at 2; [Dkt. No. 1159] at 2. The Sale Order required the Trustee and the Buyer to comply with the terms of the PSA.[4]

---

[4] *See* Sale Order [Dkt No. 1104] at 21 ("The Purchase Agreement and the Transaction Documents, and the terms and conditions thereof, are hereby approved as set forth herein, and the consummation of the Transactions is approved and authorized under section 363(b) of the Bankruptcy Code. The failure specifically to include any particular provision of the Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Purchase Agreement be authorized and approved in its entirety.")

4

13.     The Trustee has failed to comply with the PSA.  The Trustee failed to pay the Breakup Fee of $390,000.00 and the Expense Reimbursement of $115,000.00 as contemplated by the Sale Order and the PSA.  *See* PSA [Dkt No. 1158-1] at 10, § 2.1.2; 38, §§ 6.6; 39, § 6.7.

14.     To remedy the Trustee's conduct, the Court should order the Trustee to immediately pay Buyer the Breakup Fee and the Expense Reimbursement totaling $505,000.00.  The Court should further award Buyer its attorneys' fees and costs necessitated by the Trustee's failure to comply with the Sale Order and PSA and award Buyer any additional relief it deems appropriate.

## II.     Alternatively, the Court should allow an administrative expense in favor of GrayStreet in the amount of the Breakup Fee and Expense Reimbursement.

15.     Alternatively, the Court should allow GrayStreet an administrative expense for the Breakup Fee and Expense Reimbursement in the total amount of $505,000.00.

16.     Section 503(b)(1)(A) provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including . . . the actual, necessary costs and expenses of preserving the estate . . . ."  11 U.S.C. § 503(b)(1)(A).

17.     The PSA expressly provides that the Expense Reimbursement "constitutes an administrative expense in the Bankruptcy Case pursuant to Section 503(b) or 507(a)(1)(2) of the Bankruptcy Code."  PSA [Dkt No. 1158-1] at 38, § 6.6.2.  Therefore, the Court should approve and allow an administrative expense in favor of GrayStreet for the Expense Reimbursement in the amount of $115,000.00.

18.     Further, the Breakup Fee and Expense Reimbursement constitute actual, necessary costs and expenses of preserving the Debtors' estates under Section 503(b)(1)(A).

19.     Indeed, the Breakup Fee and Expense Reimbursement arose post-petition and as a result of actions taken by the Trustee.  *See The Official Comm. of Unsecured Creditors v. Bouchard Transp. Co., Inc. (In re Bouchard Transp. Co., Inc.)*, 74 F.4th 743, 751 (5th Cir. 2023) ("As the 'claimant seeking administrative expenses,' Hartree has the burden of proving that the break-up fee and expense reimbursement arose (1) 'post-petition and as a result of actions taken by' Bouchard." (quoting *Nabors Offshore Corp. v. Whisler Energy II, L.L.C. et al. (In re Whistler Energy II, L.L.C.)* 931 F.3d 432, 441 (5th Cir. 2019)).  The PSA constitutes a postpetition agreement between GrayStreet and the Estate, and GrayStreet incurred expenses as a result of postpetition actions taken by the Trustee to secure GrayStreet as a Successful Bidder as to the Mecom Ranch Assets and the Backup Buyer as to the AWP Field and South Texas Assets.  In other words, GrayStreet made a deal with the Trustee postpetition, carried out its half of the bargain, and is now seeking its Breakup Fee and Expense Reimbursement authorized by the Sale Order and the PSA.  "That is a postpetition transaction covered by § 503(b)."  *Id.* at 752.

20.     Further, the Breakup Fee and Expense Reimbursement were actual and necessary costs of preserving the Debtors' estates.  *See id.* ("Hartree must also prove that the fees were (2) 'actual' and (3) 'necessary costs and expenses of preserving the estate.'" (quoting *Whistler Energy II*, 931 F.3d at 441)); *Whistler Energy II*, 931 F.3d at 441 (internal quotation marks omitted) ("[T]o qualify as an 'actual and necessary cost' under section 503(b)(1)(A), a claim against the estate must have arisen post-petition and as a result of actions taken by the trustee [or debtor-in-possession] that benefitted the estate." (quoting *In re Jack/Wade Drilling, Inc.*, 258 F.3d 385, 387 (5th Cir. 2001) (alterations in original)).

21.     The Breakup Fee and Expense Reimbursement, as well as GrayStreet's commitment to serve as Backup Buyer for the AWP Field and South Texas Assets that was

expressly contingent upon the inclusion of the terms of the Breakup Fee and Expense Reimbursement,[5] provided numerous benefits to the Debtors' estates and creditors and helped ensure that the Successful Bidder for the AWP Field and South Texas Assets was sufficiently motivated to close the sales of the AWP Field and South Texas Assets on time and, further, that the Debtors' estates would be able to close its sales of the AWP Field and South Texas Assets if Varas Energy, LLC failed to close. On information and belief, Varas was requesting more time and seeking a delay of the scheduled January 31, 2025, closing on the AWP Field and South Texas Assets. Buyer's status as backup bidder and being ready to close on January 31, 2025, motivated Varas to either close on January 31, 2025, or risk losing its Performance Deposit of over $1 million. Moreover, through the closing of the sales of the Mecom Ranch, AWP Field, and South Texas Assets, the Trustee was able to timely satisfy the Debtors' estates' outstanding obligations on the DIP Loan.

22. Additionally, the Breakup Fee and Expense Reimbursement were necessary. Indeed, the PSA expressly provides that GrayStreet would not have executed the PSA and served as Backup Buyer as to the AWP and South Texas Assets absent the inclusion of the provisions in the PSA regarding the Breakup Fee and Expense Reimbursement. *See* PSA [Dkt No. 1158-1] at

---

[5] The PSA provides in part that "[e]ach party acknowledges that the agreements contained in this *Section 6.6* are an integral part of this Agreement and that, without these agreements, the other Party would not enter into this Agreement." PSA [Dkt No. 1158-1] at 38, § 6.6.3. The PSA also provides in relevant part that "Buyer represents to Seller that this *Section 6.6* is a condition precedent to Buyer's execution of this Agreement and is necessary to ensure that Buyer will continue to pursue the proposed acquisition of the Property . . ." and, further, that

the Expense Reimbursement, if payable hereunder, (i) is of substantial benefit to Seller's estate by, among other things, establishing a bid standard or minimum for other bidders and placing estate property in a sales configuration mode attracting other bidders to a potential auction, and (ii) is in his opinion reasonable and appropriate, including in light of the size and nature of the sale of the Property by Seller to Buyer contemplated hereby and the efforts that have been or will be expended by Buyer, notwithstanding that such sale is subject to higher and better offers, and (iii) was negotiated by the Parties at arm's-length and in good faith."

PSA [Dkt No. 1158-1] at 38-39, § 6.6.4.

38, § 6.6.3; PSA [Dkt No. 1158-1] at 38-39, § 6.6.4. The Breakup Fee and Expense Reimbursement are actual, necessary costs and expenses of preserving the Debtors' estates and, therefore, should be allowed as an administrative expense pursuant to 11 U.S.C. § 503(b)(1)(A).[6]

**CONCLUSION**

23. By failing to pay GrayStreet the Breakup Fee and Expense Reimbursement totaling $505,000.00, the Trustee has violated the Sale Order and PSA, and the Court should order the Trustee's compliance with the same. Alternatively, the Breakup Fee and Expense Reimbursement totaling $505,000.00 are actual, necessary costs and expenses of preserving the Debtors' estates and, therefore, the Court should enter an order allowing an administrative expense in favor of GrayStreet in the amount of $505,000.00 pursuant to 11 U.S.C. § 503(b)(1)(A).

WHEREFORE, Buyer respectfully requests that the Court:

1. Set a hearing for the Court's earliest availability for consideration of this Motion and Application;

2. Enter an order:
   a. enforcing the Sale Order and compelling the Trustee to comply with the PSA by paying GrayStreet Breakup Fee and Expense Reimbursement totaling $505,000.00 under Section 6.6 of the PSA;
   b. awarding GrayStreet its attorney's fees and costs incurred in enforcing the Sale Order and PSA; and
   c. granting any such other and further relief as the Court deems just and proper.

3. Alternatively, enter an order:
   a. approving and allowing GrayStreet an administrative expense for the Breakup Fee and Expense Reimbursement in the total amount of $505,000.00; and
   b. granting any such other and further relief as the Court deems just and proper.

---

[6] To the extent that the Breakup Fee and/or the Expense Reimbursement are not allowed as administrative expenses pursuant to 11 U.S.C. § 503(b)(1)(A), the Trustee, in executing the PSA and agreeing to the inclusion of Section 6.6 of the PSA, acted within her bounds of reasonable business judgment pursuant to 11 U.S.C. 363(b). *See* 11 U.S.C. 363(b)(1) ("The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ."); *In re Bouchard Transp. Co., Inc.*, 74 F.4th at 756 ("Even if we were to apply § 363(b) instead of § 503(b), the result would be the same."); *id.* ("If the break-up fee and expense reimbursement were 'necessary' to provide a benefit to the estate, then they easily satisfy a deferential reasonableness standard.").

8

4.  Grant any such other and further relief as the Court deems just and proper.

This the 11th day of March, 2025.

<div style="margin-left: 40%">

Respectfully submitted,

**GRAYSTREET CREDIT, LLC**

By:  */s/ Garrett A. Anderson*
     Garrett A. Anderson, MSB # 106267
     FLETCHER & SIPPEL, LLC
     4400 Old Canton Road, Suite 220
     Jackson, MS 39211
     Telephone: 601-414-6009
     Fax: 601-414-6016
     Email: ganderson@fletcher-sippel.com

*Attorney for GrayStreet Credit, LLC*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Notice was filed electronically through the Court's ECF system and served electronically on all parties entitled to receive electronic notices.

This the 11th day of March, 2025.

<div align="right">

*/s/ Garrett A. Anderson*
Garrett A. Anderson

</div>

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| In re: | § | Case No. 23-51715-JAW |
| | § | |
| El Dorado Gas & Oil, Inc., | § | Chapter 11 |
| | § | |
| Debtor. | § | (Jointly Administered) |

**ORDER GRANTING GRAYSTREET CREDIT, LLC S
MOTION TO ENFORCE SALE ORDER [DKT NO. 1104] AND TO COMPEL
COMPLIANCE WITH PURCHASE AND SALE AGREEMENT [DKT NO. 1200]**

Upon consideration of the Motion to Enforce Sale Order [Dkt No. 1104] and to Compel

Compliance with Purchase and Sale Agreement and, Alternatively, Application for Administration

Expense [Dkt No. 1200] (the "Motion") filed by GrayStreet Credit, LLC ("Buyer"), the Court

finds and concludes as follows:

### FINDINGS OF FACT & CONCLUSIONS OF LAW

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §157(b)(1) and 1334.[1]

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).

3. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Court retained exclusive jurisdiction over the interpretation and enforcement of the Sale Order and PSA, including exclusive jurisdiction to "resolve any disputes arising under or related to the Purchase Agreement, the Sale Transaction, or the Buyer's peaceful use and enjoyment of the Property . . . ." Sale Order [Dkt No. 1104] at 37, ¶42.

4. On December 22, 2023, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. *See* [Dkt No. 1].

5. On February 2, 2024, Dawn Ragan's appointment as Chapter 11 Trustee was approved. *See* [Dkt No. 208].

6. On January 23, 2025, the Court entered its *Order (A) Authorizing and Approving (1) The Sale of the Mecom Oil and Gas Assets of El Dorado Gas & Oil, Inc., Hugoton Operating Company, Inc. and Bluestone Natural Resources II-South Texas, LLC, Free and Clear of All Liens, Claims, Encumbrances and Other Interests and (2) The Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (B) Granting Related Relief* [Dkt No. 1104] (the "Sale Order"), which approved Buyer's purchase of certain assets of the Debtor pursuant to the PSA dated December 20, 2024. Sale Order [Dkt No. 1104]; PSA [Dkt No. 1158-1].

7. The Sale Order required the Trustee and the Buyer to comply with the terms of the PSA. *See* Sale Order [Dkt No. 1104] at 21.

8. The Court finds that the Trustee, by failing to pay Buyer the Breakup Fee of $390,000.00 and the Expense Reimbursement of $115,000.00 as contemplated by the Sale Order and the PSA, has failed to comply with the Sale Order and the PSA. *See* PSA [Dkt No. 1158-1] at 10, § 2.1.2; 38, §§ 6.6; 39, § 6.7. Therefore,

**IT IS HEREBY ORDERED** that Buyer's Motion is **GRANTED**;

**IT IS FURTHER ORDERED** that Buyer is hereby awarded attorneys' fees and costs incurred in connection with filing and pursuing the Motion;

2

IT IS FURTHER ORDERED that, within seven (7) business days of the entry of this Order, Buyer shall submit an affidavit to the Court and the Trustee reflecting its attorneys' fees and costs incurred in connection with the Motion;

IT IS FURTHER ORDERED that the Trustee shall:

1. Immediately pay Buyer the Breakup Fee and Expense Reimbursement totaling $505,000.00;

2. Within seven (7) business days of the entry of this Order, file a certificate of compliance certifying that the Trustee has paid Buyer the Breakup Fee and Expense Reimbursement totaling $505,000.00;

3. Within seven (7) business days of the Trustee's receipt of Buyer's affidavit concerning its attorneys' fees and costs incurred as a result of bringing the Motion, remit payment to Buyer for its attorneys' fees and costs incurred as a result of bringing the Motion.

IT IS FURTHER ORDERED that the Court retains exclusive jurisdiction to resolve any disputes regarding the reasonableness of Buyer's attorneys' fees and costs incurred as a result of bringing the Motion and any disputes regarding the Trustee's payment of Buyer's attorneys' fees and costs incurred as a result of bringing the Motion.

*##END OF ORDER##*

Submitted by:

*/s/ Garrett A. Anderson*
Garrett A. Anderson, MSB # 106267
FLETCHER & SIPPEL, LLC
4400 Old Canton Road, Suite 220
Jackson, MS 39211
Telephone: 601-414-6009
Fax: 601-414-6016
Email: ganderson@fletcher-sippel.com
*Attorney for GrayStreet Credit, LLC*

3