## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

In re:  El Dorado Gas & Oil, Inc.[1]

Case no.  23-51715-JAW
Chapter 11

      Debtor

## NOTICE OF MOTION FOR SUBSTANTIVE CONSOLIDATION

NOTICE IS HEREBY GIVEN that Dawn Ragan, the duly appointed chapter 11 trustee

for the bankruptcy estate of El Dorado Gas & Oil, Inc., has filed the attached motion [Dkt. #

1379] for substantive consolidation of Hugoton Operating Company, Inc., Bluestone Natural

Resources II - South Texas, LLC, World Aircraft, Inc., and El Dorado Oil & Gas, Inc. with the

above styled and numbered case pursuant to the terms and conditions specified therein.  You are

hereby notified that unless an objection or other responsive pleading is filed with the clerk of

court no later than August 5, 2025, and served on the chapter 11 trustee, U. S. Trustee and

debtors, the Court may enter a dispositive order granting the relief requested in the motion.  If an

objection is filed, the Court will hold an evidentiary hearing on August 19, 2025, at 10:00 a.m. in

Courtroom 4C, 501 East Court Street, Jackson, Mississippi 39201.

WITNESS my signature this the 27th day of June, 2025.

Respectfully Submitted,

HOOD & BOLEN, PLLC

By: /s/ R. Michael Bolen
R. MICHAEL BOLEN
MSB # 3615
HOOD & BOLEN, PLLC
ATTORNEYS AT LAW
3770 HWY. 80 WEST

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: El Dorado Gas & Oil, Inc. (4581); Hugoton Operating Company, Inc. (3245); Bluestone Natural Resources II - South Texas, LLC (4581); and World Aircraft, Inc. (4581).

JACKSON, MISSISSIPPI 39209
(601)923-0788
rmb@hoodbolen.com

Nancy Ribaudo, Texas Bar I.D. 24026066
(*pro hac vice* admission)
Katherine Hopkins, Texas Bar I.D. 24070737
(*pro hac vice* admission)
Joseph Austin, Texas Bar I.D. 24101470
(*pro hac vice* admission)
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
nancy.ribaudo@gmail.com
katherine.hopkins@kellyhart.com
joseph.austin@kellyhart.com
Telephone (817) 878-9377
Facsimile (817) 878-9280

*Counsel to Dawn Ragan,*
*Chapter 11 Trustee*

and

*/s/ Patrick A. Sheehan*
Patrick A. Sheehan
Sheehan & Ramsey, PLLC
429 Porter Avenue
Ocean Springs, MS 39564
228-875-0572/fax: 228-875-0895
pat@sheehanramsey.com

Counsel for Bluestone Natural Resources II-South
Texas, LLC and World Aircraft, Inc.

## CERTIFICATE OF SERVICE

I, R. Michael Bolen, do hereby certify that I have this day served a true and correct copy of the foregoing to the parties on the CM/ECF mailing system on this the 27th day of June, 2025.

*/s/ R. Michael Bolen*
R. Michael Bolen

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| **In re:** | § | **Case No. 23-51715-JAW** |
| | § | |
| **El Dorado Gas & Oil, Inc., *et al.*,**[1] | § | **Chapter 11** |
| | § | |
| **Debtors.** | § | **(Jointly Administered)** |
| | § | |

---

## TRUSTEE'S MOTION FOR SUBSTANTIVE
## CONSOLIDATION OF THE DEBTORS AND EL DORADO OIL & GAS, INC.

Dawn M. Ragan (the "Trustee"), the duly appointed chapter 11 trustee for El Dorado Gas & Oil, Inc. ("El Dorado") and Hugoton Operating Company, Inc. ("Hugoton"), and in that capacity, the Independent Manager of the debtor, Bluestone Natural Resources II - South Texas, LLC ("Bluestone"), and the Independent Director of the debtor, World Aircraft, Inc. ("World Aircraft", and together with El Dorado, Hugoton, and Bluestone, the "Debtors"), hereby files this *Motion for Substantive Consolidation of the Debtors and El Dorado Oil & Gas, Inc.* (the "Motion") for purposes of administering estate assets and making distributions. The Trustee submits the following in support thereof:

### PRELIMINARY STATEMENT

1.      Following her appointment in early 2024, the Trustee endeavored to identify and assess critical issues related to the Debtors, their assets, liabilities, and general operations. At the time of her appointment, a motion to substantively consolidate El Dorado and Hugoton was already on file. The Trustee carried this motion for many months while focusing her attention on more urgent matters, including operations, securing and the sale of Debtors' oil and gas and other assets located in South Texas and across several other states. All the while the Trustee gained more

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: El Dorado Gas & Oil, Inc. (4581); Hugoton Operating Company, Inc. (3245); Bluestone Natural Resources II - South Texas, LLC (4581); and World Aircraft, Inc. (4581).

---

**TRUSTEE'S MOTION FOR SUBSTANTIVE CONSOLIDATION**                                                     **PAGE 1**

information and insight into the Debtors' business, conduct and affairs. Over the course of these cases, the Trustee determined that substantive consolidation of not only El Dorado and Hugoton, but of all of the Debtors, as well as El Dorado Oil & Gas, Inc. ("EDOG" and together with the Debtors, the "Entities") was warranted and withdrew the original motion in anticipation of a more fulsome motion, which she submits now.

2.      Based on her investigation, the Trustee believes that substantive consolidation for purposes of administering assets of the Debtors and their estates is both warranted and in the best interests of the Debtors, the Debtors' estates, and creditors. In this regard, the Trustee has discovered that, for the most part, day-to-day creditors dealt with, or perceived, the Entities without distinction or regard other than as a single entity. When extending credit or providing services, these creditors believed they were dealing with a single economic unit, and in some cases were confused regarding the distinction between the Entities. Mineral interest owners also viewed the Entities interchangeably and there was confusion as to identification of their corresponding payment obligations, and against which debtor they should file a proof of claim. The secured lender in these cases regularly included the name of both El Dorado Gas & Oil, Inc. and El Dorado Oil & Gas, Inc. on a single loan or bank account. The El Dorado Debtor included the name of El Dorado Oil & Gas, Inc, on its chapter 11 petition. Several of the Entities use the same federal tax ID number.  Simply put, the Trustee has found that the affairs of the Entities are so inextricably intertwined that it would be impossible to disentangle without expending more resources than could be recovered, rendering such an exercise futile. As a result, the Trustee believes that substantive consolidation for purposes of administering estate assets and making distributions is warranted and appropriate to provide the most equitable and efficient way to administer assets of

the Debtors' estates, including through a chapter 11 plan. and is, therefore, in the best interests of the Debtors, their estates, and creditors.

3.      The Trustee further submits that the Court and other parties in interest are extremely familiar with the commingled nature of these Entities and that the relief sought herein is not shocking nor surprising. As the Court noted in its Order at Docket No. 1162[2], "[the Trustee] convincingly testified that given the number of entities involved and the extent of the commingling, it would require a significant forensic analysis to resolve all title/ownership issues at a cost that the estate could not afford. . . . It has been, and continues to be a real problem in every case related to [El Dorado]." World Ag Order, p. 10. For these and the additional reasons stated below, the Trustee submits that the Court should substantively consolidate the assets and liabilities of the Entities for purposes of administering estate assets and making distributions to creditors through a plan or otherwise in connection with these Cases.

## JURISDICTION & VENUE

4.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The basis for the relief requested herein is section 105 of title 11 of the United States Code (the "Bankruptcy Code").

## REQUEST FOR RELIEF

6.      The Trustee seeks the entry of an order, substantially in the form attached hereto (the "Proposed Order"), ordering substantive consolidation of the debtor entities of El Dorado,

---

[2]      The Court's Order Denying Without Prejudice First Service Bank's Motion for Entry of an Order (I) Extending the Automatic Stay Under 11 U.S.C. § 362 and (II) Granting Related Relief, Dkt. # 1162 shall be referred to herein as the "World Ag Order".

Hugoton, Bluestone, and World Aircraft, together with El Dorado Oil & Gas, Inc. ("EDOG" and together with the Debtors, the "Entities") for purposes of administering estate assets and making distributions, including through a chapter 11 plan. Specifically, and as further set forth herein, the Trustee requests that the assets and liabilities of the Entities be merged for purposes of making distributions to creditors. This Motion does not seek to impact lien priority, validity, or otherwise affect the liens of creditors or collateral rights, which will have the same validity and priority as of the applicable debtor petition date. As a result, the Trustee does not believe it is necessary to further consolidate the Entities.

## BACKGROUND[3]

### A.    Procedural Background

7.    Hugoton filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on August 14, 2023. El Dorado filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code on December 22, 2023. On January 22, 2024, the Court approved Ms. Ragan as the chapter 11 trustee for Hugoton. On February 2, 2024, the Court approved the Trustee as the chapter 11 trustee for El Dorado. On March 12, 2024, this Court entered an order jointly administering the El Dorado and Hugoton cases.

8.    Bluestone and World Aircraft filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code on February 22, 2024.

9.    Following the Trustee's appointment, she began her initial investigation, including an examination of the relationship between El Dorado, Hugoton, and other related entities. It quickly became clear that not only were El Dorado's and Hugoton's operations and management intertwined, but, also that of Bluestone and World Aircraft and later, EDOG.

---

[3]    Unless denoted otherwise, all docket references are to the El Dorado case.

TRUSTEE'S MOTION FOR SUBSTANTIVE CONSOLIDATION                                          PAGE 4

10.     Following the commencement of Bluestone's and World Aircraft's chapter 11 cases, the Trustee, along with Bluestone and World Aircraft, filed that certain *Joint Motion for Entry of an Agreed Order (I) Authorizing Dawn Ragan to Act as Director and Officer for the Subsidiaries; (II) Approving Compensation and Retention Provisions; and (III) Related Relief* [Docket No. 369] (the "Subsidiary Motion").

11.     On May 22, 2024, the Court granted the Subsidiary Motion, with modified relief, authorizing the Trustee to serve as the Independent Manager for Bluestone and the Independent Director for World Aircraft (which such capacity she has continued to serve in) and directing the joint administration of all four bankruptcy cases (collectively, the "Cases") with El Dorado as the lead case. *See* Docket No. 455.

## B.     Underlying Facts Supporting the Relief Requested Herein

12.     Shortly after the Trustee became involved in the Cases, she made significant efforts to identify and address urgent issues related to operations, assets, and liabilities. The Trustee quickly surmised that creditors rarely relied on the individual identities of the Entities when conducting business and that the Entities had not practiced any real degree of corporate separation. The Entities used funds, names, accounts, and a host of other business functions interchangeably and as a result, the Entities are so inextricably intertwined that it would be extremely difficult, if not impossible, to disentangle them. *See Preliminary Report by Chapter 11 Trustee for Hugoton Operating Company, Inc.* [Docket No. 196] and *Second Report of Chapter 11 Trustee* Docket No. 674 (together, the "Status Reports").

13.     The Trustee has now determined that the Entities should be substantively consolidated for purposes of administering assets of the estates, including through a chapter 11 plan. The Trustee has found ample evidence confirming that in dealing with the Entities, creditors

---

rarely relied on individual identities; but rather, in most instances, dealt with them with little, if any, distinction (except for collateral holdings). There were many references to "It's all Swarek." Further, the Trustee has determined that the business books, records and general affairs of the Entities were maintained as if they were one body and are so intertwined that any attempt to disentangle their affairs would require far more resources than could ever be realized, rendering such efforts futile.

### i.   *Business Overview*

14.   The Entities regularly relied on administrative and operating convenience rather than function to distinguish the Entities' commingled assets and funds, treated employees of one Entity as an employee of all the Entities, and ultimately failed to keep adequate records to document a distinct corporate relationship between and among them. The Trustee's assessment of the Entities' practices, and failures, is that the lack of experienced management, such as a CFO and COO, contributed to the Entities' condition.  Further, the Entities did not employ an outside accounting and tax firm to implement best practices. As the Trustee conducted her investigation, it became apparent that the Entities never practiced meaningful corporate governance and separation between operations. As all the Entities were owned or controlled by Mr. Swarek, and there was only one corporate administrative function, customary corporate separateness was not understood by the Entities or employees to be necessary. As she previously testified, the Trustee's search through boxes and boxes of corporate documents failed to uncover any record of inter-company accounting. World Ag Order, p. 10. It appears that the Entities drew from whatever cash accounts had available funds and prioritized administrative and operating convenience over corporate separateness, while not maintaining intercompany accounting. Consequently, the

---

Entities' method of conducting business and managing accounts has created confusion, as well as legal and title issues, among creditors and the various other parties involved in these Cases.

### a.   *Corporate Structure*

15.   El Dorado is the Parent Company. El Dorado aka EDOG is 100% owned by Thomas Swarek ("Swarek"). El Dorado aka EDOG is the parent entity of all the other Debtors with a 100% direct or indirect ownership interest in Hugoton, Bluestone, and World Aircraft, among others. El Dorado has also conducted business as EDOG, with both using the same federal tax ID number. EDOG is the name used on the consolidated federal tax return. The record keeping has been so lax that the Trustee discovered the majority of time the federal EIN reported was actually incorrect, including on the federal return. The EIN most often used was 71-1544581, while the correct EIN is 71-0544581.

### b.   *Operations*

16.   El Dorado and Hugoton as Oil And Gas Owners and Operators. El Dorado, Hugoton, and Bluestone owned certain oil and gas assets and leases, with Hugoton, El Dorado, and a non-debtor affiliate, Dorado Drilling, serving as operators. El Dorado, Hugoton, and Bluestone did not make any payments to Hugoton, Dorado Drilling, or El Dorado for services; but rather, effectively treated Hugoton and Bluestone as internal divisions or cost centers of El Dorado, ignoring corporate separateness.

17.   El Dorado Paid For Hugoton's Operating Expenses. As the operators of the wells, El Dorado and Hugoton incurred costs and each entered into agreements in their separate names, but these agreements and expenses were ultimately treated as contracts of El Dorado. Payments for operating costs were often from El Dorado's bank accounts, notwithstanding that invoices would be in the name of El Dorado or Hugoton, as the respective operator.

---

18.   Buyers Paid El Dorado For Hugoton's Production And Vice-Versa. Hugoton had almost no direct, independent income; only nominal amounts related to various minor operations. For example, El Dorado or Hugoton would sell production, and a buyer purchasing production from Hugoton or El Dorado would remit combined payment to one of the parties, and the funds would be deposited into either a Hugoton or El Dorado bank account, and not reconciled between the two debtors. Poor recordkeeping and documentation further contributed to a lack of delineation between Entities and funds.

19.   Royalty Payments Were Indiscriminately Made From Bank Accounts. Royalties were calculated and statements were issued in the name of either El Dorado or Hugoton based on production reporting. However, when El Dorado or Hugoton issued checks to pay royalties, the funds would come from whichever bank account had available cash—not necessarily because such payment was tied to a particular lease or production statement or Entity. Up until May or June 2023, royalties were determined and paid in a customary manner. Thereafter, royalty payments began to go unpaid, or were made haphazardly without calculation or proper remittance, causing issues, concerns and confusion among mineral interest owners.

20.   The Entities' Business Practices Created Significant Confusion. Because El Dorado, Hugoton, and Bluestone regularly ignored corporate formalities with regard to payment of expenses and receipt of revenue, vendors along with mineral interest holders often viewed El Dorado, Hugoton, and Bluestone interchangeably, leading to significant confusion as to which Entity was actually liable to any specific creditor.

### c.   *Personal Property And Equipment*

21.   Funding For World Aircraft's Personal Property. World Aircraft, a wholly owned subsidiary of El Dorado, was formed as a tax-exempt entity to buy and sell equipment and other

---

personal property, which included oil field equipment, old planes, office equipment, and medical supplies, among other items.

22.     World Aircraft is the named purchaser of a significant amount of equipment assets and was the named party bidding at pre-petition auctions to acquire equipment assets; *however*, the funds World Aircraft used for these purchases often came from El Dorado, *not World Aircraft*. El Dorado generally directed wire transfers of funds from its bank accounts to the sellers, to pay invoices sellers issued in the name of World Aircraft. A significant amount of proceeds from El Dorado's "Main Street Loan" were used to acquire assets in the name of World Aircraft. In certain circumstances, funds from other related entities, including Escambia[4], also appear to have been used, at least in part, to purchase assets in the name of World Aircraft. Ultimately, it appears that funds were drawn from whatever cash accounts had money and administrative convenience was prioritized over corporate separateness in purchasing assets, creating confusion among various parties as to ownership of the purchased property.

23.     Further, once personal property was acquired, whether in the name of World Aircraft or otherwise, assets such as vehicles or other items with vin numbers, often were not retitled or registered in the name of any of the Entities. This became evident and a significant issue during the Tiger [5]asset sales.  Correcting title in some cases is still ongoing.

### d.     Employees And Other Goods And Service Providers

24.     Employee and Vendor Payments.  Each of the Entities relied on a common set of employees to provide operating or accounting services. Employees were initially treated as 1099

---

[4]     Escambia refers to Escambia Operating Company, LLC, and its affiliated debtors in separate bankruptcy proceedings before this Court.

[5]     Tiger refers to Tiger Capital Group, LLC.

contractors, and later became W-2 employees of yet another Swarek entity (Excell Operating or Zapata Excell). It appears that in the past, personnel costs were not necessarily paid by the Entity for whom services were provided, but rather, were paid from whatever Entity had sufficient funds at the time, and most often, El Dorado. Employees commented to the Trustee that they believed they were working for the entirety of the Swarek group of companies, and that they were unsure about the filing of claims.

25.    The same is true for vendors. The Entities used El Dorado's accounts as the primary source for payment to vendors, sometimes making direct payments from El Dorado to vendors, and sometimes by El Dorado transferring cash to the Entities to make the payment directly, and all without recording intercompany transfers. The lack of sufficient and intercompany records has not permitted the Trustee's team to calculate claims by Entity. Vendors communicated to the Trustee that they were unsure in which case they should file their claims.

### e.    Ad Valorem Taxes

26.    Hugoton was primarily an operator of the oil and gas assets, as opposed to the owner of mineral leases. However, the Trustee found instances where certain ad valorem tax bills were in the name of Hugoton, when they properly should have been in the name of El Dorado.

### ii.    Financial And Tax Reporting

27.    The Entities Are Treated As Consolidated For Accounting And Tax Purposes. The Entities have historically consolidated all the Entities for financial reporting and tax purposes under EDOG, which is one and the same for tax reporting purposes with El Dorado. There are no separate financial reporting schedules for the various Entities, nor are there separate schedules of operating expenses such as for wells or fields (it is common practice in the oil and gas industry to maintain lease operating expense schedules, known as "LOE's"), that could have provided a

---

TRUSTEE'S MOTION FOR SUBSTANTIVE CONSOLIDATION                    PAGE 10

potential starting point for partial expense reconciliation. The Court stated this in its prior Order finding that "[El Dorado] filed single unified tax returns, meaning that [El Dorado] and its subsidiaries reported income taxes as a consolidated group." World Ag Order, p. 1.

28.    Further, there are no intercompany accounts, or "due to" and "due from" accounts, that would indicate cash transfers, asset transfers, liabilities by Entity, or if one Entity is a net creditor of another. El Dorado treated itself and its subsidiaries as one unit for tax and reporting purposes. The Trustee inquired with the Entities' tax accounting firm, which confirmed a lack of separate corporate records. Again, it appears funds were moved between the Entities as a means to achieve administrative convenience and to meet cash needs, not because of a specific business purpose.

### iii.    *Non-Debtor EDOG*

29.    As can be seen on El Dorado's Petition [Docket No. 1] and Amended Petition [Docket No. 11], El Dorado denotes that it conducted business also in the name of EDOG. The Trustee determined that El Dorado and EDOG submitted tax returns as a single entity, under the same (incorrect) tax identification number, as discussed above. The Entities' secured lender, regularly included the names of both El Dorado and EDOG on loan documents and bank accounts. EDOG does not appear to have any separate business or income stream apart from El Dorado. Certain real property assets were acquired in the name of EDOG, with the funds coming from El Dorado. Further, the vast majority, if not all, of EDOG's creditors are also creditors of El Dorado and the Entities track the creditors collectively. These creditors have received notice in connection with these Cases. Also, to the extent EDOG is identified as the owner of property in the real property records, all taxing entities have received notice of the Cases.

---

30.     After additional investigation, the Trustee has concluded that the notation on El Dorado's Voluntary Petition is accurate and that EDOG has not been treated as separate and distinct from El Dorado; but rather, as an alternate name or dba. Based on the foregoing, the Trustee has concluded that EDOG and El Dorado are the same entity and should be treated as such.

31.     The Court has further agreed with this position as evidenced by its Order stating that the "tax returns are filed in the name of El Dorado Oil & Gas, Inc. . . ., not EDGO. They are the same entity. EDGO's bankruptcy petition identifies EDGO and EDOG as one debtor, and EDGO and EDOG share the same tax identification number." World Ag Order, p. 12.

32.     However, out of an abundance of caution, and to the extent EDOG is, in fact, a separate entity, the Trustee requests that the Court substantively consolidate EDOG with El Dorado (and the other Debtors).

### iv.     *Substantive Consolidation*

33.     Previously in these Cases, El Dorado filed an emergency motion to substantively consolidate its case with Hugoton. *See* Docket No. 151. However, that motion was subsequently continued until the Trustee could make an independent determination of whether to pursue substantive consolidation of El Dorado, Hugoton, and any other entities. The Trustee has now conducted her own independent evaluation and has concluded that substantive consolidation of the Entities for purposes of administering their assets is warranted and in the best interests of the Debtors, their estates, creditors, and all other interested parties in these Cases.

34.     It is clear from the Trustee's analysis, that the Entities' affairs are extremely intertwined and would be extremely difficult, and perhaps impossible, to unwind. Further, it would likely take significant time, resources, and cost to conduct a forensic accounting and deconstruct cash flows, liabilities and expense allocations, particularly given the lack of written

documentation, written contracts and agreements, and lack of separate financial reporting schedules between the Entities. Such a forensic accounting undertaking would be an enormous undertaking at great expense, and given the magnitude of the commingling, the Trustee does not believe a forensic exercise could be adequately completed without incorporating significant assumptions or hypotheticals, reducing any value that could potentially be achieved.

35. If the Motion is denied and the Entities are required to continue with unconsolidated assets and liabilities, the Trustee would need to conduct an extensive historical analysis to segregate the Debtors' financial affairs and liabilities. For instance, the Trustee would need to determine, among other things: historical allocations for operating services, personnel, and vendor agreements; how to revise accounting statements/reports with third-party vendors to separate payments; and how to establish formal divisions between all of the Entities, including with regard to financial reporting, taxes, banking, payroll, and operations. The foregoing would be a herculean task, if not impossible.

## BASIS FOR RELIEF REQUESTED

### A. The Court Can Substantively Consolidate The Entities and Assets

36. Substantive consolidation is a federal bankruptcy remedy through which the assets and liabilities of different legal entities may be consolidated and treated as the assets and liabilities of a single estate for purposes of a bankruptcy case. *In re Am. Int'l Refinery*, 402 B.R. 728, 742 (Bankr. W.D. La. 2008) (citing *In re Ark–La–Tex Timber Co., Inc.*, 482 F.3d 319, 327 (5th Cir. 2007) and *In re Owens Corning*, 419 F.3d 195, 205 (3rd Cir. 2005)). While, there is no Bankruptcy Code provision providing for substantive consolidation outside of the context of a plan, the authority has been recognized under the equitable powers of the court. *In re Coleman*, 417 B.R. 712, 725 (Bankr. S.D. Miss. 2009) (citing *In re S.I. Acquisition Inc.*, 817 F.2d 1142, 1144 n.2 (5th Cir. 1987) ("The bankruptcy court has authority to order *de facto* disregard of the corporate form

through consolidation proceedings."). In fact, most courts, including those in the Fifth Circuit, have found that bankruptcy courts have the authority to consolidate debtors and also debtors with non-debtors. *See, e.g., Soviero v. Franklin Nat'l Bank,* 328 F.2d 446 (2nd Cir. 1964); *Yaquinto v. Ward (In re Ward),* 558 B.R. 771, 793 (Bankr. N.D. Tex. 2016); *Rodriguez v. Boyd (In re Boyd),* No. 11-51797, 2012 Bankr. LEXIS 4969, at *13 (Bankr. W.D. Tex. Oct. 20, 2012); *Roberts v. J. Howard Bass & Assocs., Inc. (In re Bass),* Nos. 09-11451-CAG, 10-01101- CAG, 2011 Bankr. LEXIS 555, at *36 (Bankr. W.D. Tex. Feb. 15, 2011); *In re E'Lite Eyewear Holding, Inc.,* No. 08-41374, 2009 Bankr. LEXIS 297, at *12 (Bankr. E.D. Tex. Feb. 5, 2009); *Permian Producers Drilling, Inc.,* 263 B.R. 510, 515–517 (W.D. Tex. 2000).

37.    Moreover, this Court has granted substantive consolidation under the appropriate circumstances. *See In re Kevin Coleman,* Case No. 07-00515-NPO, Docket No. 44 (finding that all creditors of the consolidated debtors treated them as a single entity, Case No. 07-00515-NPO, Docket No. 44, p. 1 of 3, ¶ 4, and finding that the cost to unravel the pre-petition transactions to establish clear and separate identities of the consolidated debtors would likely exceed any benefit that could be gained from such an exercise, Case No. 07-00515-NPO, Docket No. 44, p. 2 of 3, ¶ 5.).

38.    The bankruptcy court has the power, in appropriate circumstances, to order less than complete substantive consolidation, or to place conditions on the substantive consolidation. The court is afforded a good deal of discretion in constructing its order of substantive consolidation and its appropriateness is determined by the court on a *sui generis* basis. *In re Deltacorp, Inc.,* 179 B.R. 773 (Bankr. S.D.N.Y. 1995). Where, for example, property subject to a security interest would be enlarged by substantive consolidation (e.g. "all accounts receivable"), the court may

---

qualify the consolidation to protect unsecured creditors. *In re Parkway Calabasas, Ltd.*, 89 B.R. 832, 837 (Bankr. C.D. Ca. 1988).

39.     While some courts have found that substantive consolidation is an "extreme and unusual" remedy, there are justifications for substantive consolidation, especially in cases like these. *In re Pacific Lumber Co.*, 584 F.3d 229, 249 (5th Cir. 2009). And "as careful as the courts must be in allowing substantive consolidation of debtors to occur . . ., the caution must be multiplied exponentially in a situation where a consolidation of a debtor's case with a non-debtor is attempted." *E'Lite Eyewear*, No. 08-41374, 2009 Bankr. LEXIS 297, at *7 (citing *Morse Operations, Inc. v. Robins Le-Cocq, Inc. (In re Lease-A-Fleet, Inc.)*, 141 B.R. 869, 872 (Bankr. E.D. Pa. 1992)). Notice to all of the non-debtor's creditors is generally required. *See e.g., Ward*, 558 B.R. at 799.

40.     Ultimately, the "sole purpose of substantive consolidation is to ensure the equitable treatment of all creditors." *In re ADPT DFW Holdings*, LLC, 574 B.R. 87, 96 (Bankr. N.D. Tex. 2017); *see also Coleman*, 417 B.R. at 726 (granting substantive consolidation as a means to treat the debtor and creditors equitably); *see also In re Augie/Restivo Baking Co.*, 860 F.2d 515 (2d Cir. 1988).

41.     Although there is no specific Bankruptcy Code provision that uses the term "substantive consolidation," courts have primarily relied on two statutes when ordering substantive consolidation: Sections 1123(a)(5)(C) and 105(a). Section 1123(a)(5)(C) permits a consolidation or merger in the context of a plan. Specifically, this section provides that a chapter 11 plan shall provide adequate means for the plan's implementation, such as "merger or consolidation of the debtor with one or more persons." 11 U.S.C. § 1123(a)(5)(C).

---

TRUSTEE'S MOTION FOR SUBSTANTIVE CONSOLIDATION                                    PAGE 15

42.     Outside of a plan, courts have found that the power to effect substantive consolidation is derived from the Court's general equitable powers set forth in § 105(a). *ADPT DFW Holdings*, 574 B.R. at 93; *In re Introgen Therapeutics, Inc.*, 429 B.R. 570 (2010) ("it is certainly within the power of this Court to order substantive consolidation.").

43.     Currently, the Trustee is working on a chapter 11 plan and anticipates filing such plan in the near future. As was the case in *Owens Corning*, the Trustee seeks substantive consolidation not in the plan confirmation process, but via motion prior to and in anticipation of a liquidating plan and distribution of assets thereunder. Based on the support herein, the Court may grant such relief pursuant to its authority under § 105 to facilitate the equitable distribution of assets including through a plan. *See In re Deltacorp, Inc.*, 179 B.R. 773.

44.     The Trustee here requests that the Court order substantive consolidation for the purpose of administering estate assets and making distributions to creditors. The Trustee requests that the assets and liabilities of the Entities be merged, respectively, in order to satisfy creditors' claims. The Trustee states that the requested substantive consolidation will not impact the legal and corporate structures of the Debtors nor pre- and post-petition liens or security interests. Rather, the requested substantive consolidation will effectively combine the respective assets and liabilities of each of the Entities for purposes of making distributions to claimants, but not impacting collateral rights. The Trustee believes this is in the best interests of not only unsecured and administrative expense claimants, but also secured creditors as consolidation eliminates confusion and decreases costs related to liquidation of estate assets. As previously stated, the Trustee believes the proposed scope of consolidation is appropriate based on these circumstances.

**B.     The Court Should Substantively Consolidate The Entities for Purposes of Administering Assets and Making Distributions**

45.     While the Fifth Circuit has not endorsed a single standard for granting substantive consolidation outside of a plan, courts in the Fifth Circuit consider certain factors in determining whether to grant substantive consolidation of related debtors. *Coleman*, 417 B.R. at 726 (citing *Permian Producers*, 263 B.R. at 518); *see also ADPT DFW Holdings*, 574 B.R. at 94. Courts often employ a test comprised of multiple factors, including, but not limited to: (i) the presence or absence of consolidated financial statements; (ii) the unity of interests and ownership between the various corporate entities; (iii) the existence of parent and intercorporate guaranties on loans; (iv) the degree of difficulty in segregating and ascertaining individual assets and liabilities; (v) the transfer of assets without formal observance of corporate formalities; (vi) the commingling of business functions; (vii) the profitability of consolidation at a single physical location; (viii) the parent corporation owns all or a majority of the capital stock of the subsidiary; (ix) the parent and subsidiary have common officers and directors; (x) the parent finances the subsidiary; (xi) the parent is responsible for the incorporation of the subsidiary; (xii) the subsidiary has grossly inadequate capital; (xiii) the parent pays salaries, expenses, or losses of the subsidiary; (xiv) the subsidiary has substantially no business except with the parent; (xv) the subsidiary has essentially no assets except for those conveyed by the parent; (xvi) the parent refers to the subsidiary as a department or division of the parent; (xvii) the directors or officers of the subsidiary do not act in interests of the subsidiary, but take directions from the parent; and (xviii) the formal legal requirements of the subsidiary as a separate and independent corporation are not observed. *ADPT*,

574 B.R. at 94–95; *In re AHF Dev., Ltd.*, 462 B.R. 186, 195–96 (Bankr. N.D. Tex. 2011); *E'Lite Eyewear*, No. 08-41374, 2009 Bankr. LEXIS 297, at *8.

46.     No single element or group of elements is determinative to the outcome of whether a court should grant substantive consolidation. *AHF*, 462 B.R. at 196. Perhaps, the most common group of elements resulting in application of substantive consolidation is poor or nonexistent record keeping of, or commingling of, assets (particularly cash and other liquid assets) and liabilities and inter-affiliate transactions, whether by design or otherwise, that makes it prohibitively expensive or impossible to sort out the proper allocation of assets and liabilities. *Id.*

47.     The Trustee submits that the following factors supports substantively consolidating the Entities for purposes of administering estate assets and making distributions:

48.     i. Presence or Absence of Consolidated Financial Statements. The financial statements are compiled on a cash basis based on monthly bank statements, consolidated for all bank activity of the Entities, and there are no separate financial reporting schedules for one Entity versus another Entity. There are also no intercompany accounts between the Entities, or "due to" and "due from" accounts that would indicate if one Entity is a creditor of the other.

49.     The same circumstances exist with regard to tax filings.  The Entities are all included on one tax return, without subsidiary or consolidating schedules for assets and liabilities, nor income and expense.  Several of the Entities have used the same tax ID number.

50.     ii. Unity of Interests and Ownership Between the Various Corporate Entities. Each of the Debtors are wholly owned (either directly or indirectly) subsidiaries of El Dorado, according to tax returns and corporate ownership statements, while EDOG is a dba of El Dorado.

---

TRUSTEE'S MOTION FOR SUBSTANTIVE CONSOLIDATION                                        PAGE 18

51.      iii. Existence of Parent and Intercorporate Guaranties on Loans. There are multiple instances in the secured lender documentation and proofs of claim illustrating Entity guaranty obligations for external loans extended to other Entities.

52.      The Entities have entered into various loans under which other Entities serve as guarantors on such loans. Loan documents between certain of the Entities and third parties reflect that other Entities did, in fact, serve as co-borrowers or guarantors in connection with the primary obligations of other Entities.

53.      iv. Degree of Difficulty in Segregating and Ascertaining Individual Assets and Liabilities. As the Court has previously discussed the "[i]ssues of title and ownership—which assets belong to which entity—have been a pervasive and extensive problem in every bankruptcy case commenced by Swarek." World Ag Order, p. 9. This factor strongly supports substantively consolidating the Entities.

54.      Upon the Trustee's completion of her investigation, she determined that segregating and ascertaining the individual assets and liabilities of the Entities would be futile. The Trustee submits that the Entities regularly failed to properly paper and document a significant amount of the business they conducted between themselves, and in practice, operated the Entities as if they were one. Assets were purchased in the name of one Entity and paid for by another Entity. Loan proceeds in the name of one entity were used to acquire assets in the name, or for the benefit, of another Entity. These practices make it nearly impossible to determine, or reconstruct, who owns what and who owes who. Any attempt to accurately segregate and ascertain the individual assets and liabilities of the Entities, would take an unknown period of time, be an expensive and difficult, if not impossible task, and is not anticipated to result in actionable outcomes that would benefit creditors.

---

55.    v. Transfer of Assets Without Formal Observance of Corporate Formalities. This factor strongly supports substantively consolidating the Entities. As discussed herein, the Entities regularly failed to follow any corporate formalities in their operations and ordinary course of business, *particularly with regard to acquisition and transfer of assets*. The Trustee has previously testified that there was no formal observance of corporate formalities. World Ag Order, p. 9. As noted above, this included the failure to properly document the purchase and transfer of cash and assets, particularly between El Dorado, EDOG and World Aircraft when assets were acquired, and including Hugoton and Bluestone when the assets were put into use.  Recordkeeping and corporate formalities were so blatantly lax, that the Trustee found many instances during the Tiger sale process where titles were not properly conveyed and registered to the Entities after purchase.

56.    vi. Commingling Of Business Functions. This factor strongly supports substantive consolidation of the Entities. The Entities regularly blurred the lines regarding business functions in day-to-day operations. Employees operated the Entities as if they were one, acknowledging only that the Entities were all associated with Swarek. Certain employees provided services to multiple Entities, or other Entities, besides the primary Entity that employed them, without payroll cost being allocated. Simply put, there was no awareness of any need to distinguish among the Entities, with the common refrain: "It's all Swarek."

57.    vii. Parent Corporation Owns All Or A Majority Of The Capital Stock Of The Subsidiary. As noted above with respect to the unity of ownership among the Debtors, each of the other Debtors are wholly owned (either directly or indirectly) subsidiaries of El Dorado, while EDOG is one and the same of El Dorado.

58.    viii. Parent And Subsidiary Have Common Officers And Directors. Mr. Thomas Swarek served as the President and sole director for all of the Entities. He was the sole decision

maker for the Entities and executed the petitions on behalf of the Debtors. There are no other pre-petition officers or directors of the Entities.

59.     ix. Parent Finances The Subsidiary. Notwithstanding the commingling of cash, based on the Trustee's review of the records, it appears El Dorado, as the parent of the Debtors and with EDOG as its dba, was the primary source of cash and resources for the Entities, making significant cash transfers on behalf of the Entities and to subsidize shortfalls.

60.     x. Parent Is Responsible For The Incorporation Of The Subsidiary. Swarek, as the 100% owner of El Dorado, directed the creation of more than 100 separate entities, including the Entities, and upon information and belief, would refer to the Entities as being owned by El Dorado prior to the bankruptcy filings, and thereafter.

61.     xi. Subsidiary Has Grossly Inadequate Capital. Rarely did the Entities, other than El Dorado, have adequate capital to meet their operating expenses. Neither EDOG, Bluestone nor World Aircraft had any separate, discrete revenue sources. Absent El Dorado providing financing to the other Entities, they would not have sufficient capital to conduct their businesses. It cannot be determined if one Entity versus another had any, let alone adequate, capital because of the lack of record keeping and consolidated returns.

62.     xii. Parent Pays Salaries, Expenses, Or Losses Of The Subsidiary. As noted above, El Dorado has historically provided the financial or supplemental means for the Entities to pay expenses for the Entities' operations. Losses are consolidated for tax and reporting purposes.

63.     xiii. Subsidiary Has Substantially No Business Except With The Parent. EDOG has no independent business separate from El Dorado. Hugoton provides services only to the Entities. Bluestone and World Aircraft have no independent, if any, operating business, and primarily are only the named owners of certain assets.

---

64.     xiv. Subsidiary Has Essentially No Assets Except For Those Conveyed By The Parent. Most of the assets of the Entities are either in the name of El Dorado, or the Entities used funds provided to them from El Dorado to purchase such assets, as discussed above.

65.     xv. Parent Refers To The Subsidiary As A Department Or Division Of The Parent. El Dorado treated Hugoton and World Aircraft as internal divisions of itself. El Dorado treated Hugoton as its operator, and treated World Aircraft as a platform to purchase oil and gas assets, among other items. There was no separate operating business or income stream for EDOG, separate from El Dorado. El Dorado actions identify it as the parent and controlling entity, and the actions and reporting of the Entities identify themselves as subsidiaries at the direction of El Dorado. The fact that the Entities used consolidated financial statements and were consolidated tax entities, with El Dorado being the lead Entity, further supports these factors.

66.     xvi. Directors or Officers of the Subsidiary Do Not Act in Interests of the Subsidiary But Take Directions From the Parent. Swarek was the only officer and director of the Entities pre-petition. Upon information and belief of the Trustee, Swarek regularly touted, or presented, El Dorado as the primary entity. Swarek obligated the non-El Dorado subsidiary Entities on the debts of El Dorado, without separately or distinctly identifying or providing related consideration.

67.     xvii. Formal Legal Requirements of the Subsidiary as a Separate and Independent Corporation are Not Observed. Rarely, if at all, did the Entities observe formal legal requirements. There are no corporate meetings or minutes, except for what may have been required at the time of the Main Street Loan. The Entities' books and records, and operating business practices, do not distinguish the Entities separate from El Dorado.

C.   **Under A Consolidated Factors Test, The Court Should Substantively Consolidate The Entities For Purposes of Administering Estate Assets and Making Distributions**

68.   Although case law discusses the multitude of factors set forth above, courts generally distill these factors down and focus on the following two factors (including in the consideration of consolidation of a debtor with a non-debtor entity):

  i.   whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit; and

  ii.   whether the affairs of the debtors are so entangled that consolidation would benefit all creditors.

*Coleman*, 417 B.R. at 726; *In re Augie-Restivo Baking Co.*, 860 F.2d 515, 518 (2d Cir. 1988)); *see also E'Lite Eyewear*, No. 08-41374, 2009 Bankr. LEXIS 297, at *9–11 (using this two-factor test to determine whether to substantively consolidate a debtor entity with a non-debtor entity). If either factor is satisfied, substantive consolidation may be granted. *ADPT*, 574 B.R. at 95–96.

  i.   *Creditors viewed the Entities as a single economic unit*

69.   The first factor, lack of reliance on the separate identity of the entities, is based on the consideration that lenders "structure their loans according to their expectations regarding th[e] borrower and do not anticipate either having the assets of a more sound company available in the case of insolvency or having the creditors of a less sound debtor compete for the borrower's assets." *Augie-Restivo*, 860 F.2d at 518–19.

70.   Here, when creditors dealt with the Entities, they viewed them as a single economic unit all related to El Dorado (and Swarek). If the Entities are not substantively consolidated, it would be extremely prejudicial to the Entities and their creditors. Given that the Entities maintained consolidated recordkeeping, determining which Entity is liable to which creditor and which creditor has a claim against which Entity would be extremely difficult if not impossible. As creditors dealt with the Entities, it is apparent that creditors rarely relied on the individual identities

of the Entities as there were no financial statements to provide in the support of credit requests, other than those of El Dorado. The creditors regularly believed that the assets and liabilities of any one Entity were the assets and liabilities of all the Entities. By way of example, El Dorado frequently paid vendors and employees for the goods and services they provided Hugoton related to oil and gas operations. Moreover, El Dorado—and others—frequently paid seller invoices related to World Aircraft's purchase of personal property.

### ii.     *The Entities' affairs are so entangled that consolidation would benefit all of the Entities and their creditors*

71.     Under the second factor (entanglement of the debtor's affairs), substantive consolidation is justified where "the time and expense necessary even to attempt to unscramble them [is] so substantial as to threaten the realization of any net assets for all the creditors" or where no accurate identification and allocation of assets is possible. *Augie-Restivo*, 860 F.2d at 519.

72.     Here, the Trustee has determined the Entities' affairs are so entangled that trying to disentangle them would likely cost more than would be recovered, rendering such efforts futile. Corporate formalities between the Entities were regularly ignored, and rarely did the Entities attempt to record and document any corporate actions between them. Because of this, tracing any financial activities among the Entities is extremely difficult and would require a forensic accounting of many years, thousands of transactions, and thousands of documents that does not make sense in these Cases. One or more of the Entities often purchased assets using the funds of another Entity, generally El Dorado, without documenting any type of loan or recordkeeping. Assets and funds were regularly transferred between the Entities in their ordinary course, again with little to no records or other documentation to track these transactions and use of funds. The Entities frequently commingled assets, and the business functions of the Entities were not distinct and often fluid. Accordingly, segregating the individual assets and liabilities between and among

TRUSTEE'S MOTION FOR SUBSTANTIVE CONSOLIDATION                                    PAGE 24

the Entities would be extremely difficult, if not impossible. It is the Trustee's assessment that the cost associated with an exercise to attempt to untangle the Entities affairs would not produce an outcome that would be meaningful, either as an analysis, or as impactful to creditor recoveries.

73.     Judge Olack held in *Coleman,* that substantive consolidation was appropriate in those cases on several grounds, including the fact that the "cost to unravel the pre-petition transactions so as to establish clear and separate identities of the [debtors] would, in all likelihood, exceed any benefit that could be gained from such an exercise." *In re Coleman,* Case No. 07-00515-NPO. As evidenced above, this is equally true in these Cases.

74.     At this juncture, the Court should order substantive consolidation for purposes of administering estate assets and making distributions given that creditors viewed the Entities as a single economic unit and disentangling the Entities' affairs would not be cost-effective or likely possible.

## NOTICE

75.     Notice of this Motion, including the time fixed for objecting, has been provided to the following parties or, in lieu thereof, to their counsel, if known: (a) FSB; (b) the United States Trustee for the Southern District of Mississippi; (c) Drew McManigle, as the chapter 11 trustee in the Escambia Cases; (d) all of the Debtors' creditors; (e) all mineral interest owners; (f) federal, state, and local taxing authorities; (g) all parties that have requested notice pursuant to Bankruptcy Rule 2002; (h) all other parties in interest in these cases; and (i) all known creditors of the Non-Debtor. The Trustee submits that no other or further notice is necessary.

## CONCLUSION

Case precedent indicates there have been many factors identified to assess a basis for substantive consolidation, and those factors have subsequently been grouped into two primary

factors; the presence of either is sufficient to support substantive consolidation. Here, strong evidentiary support in the form of *a multitude of factors* exists supporting the requested substantive consolidation. Most importantly, the Trustee's assessment of the facts and circumstances is that the Entities' assets and liabilities are so inextricably intertwined, any attempt to separate them out would be futile, costly and generate no meaningful, if any, benefit to creditor recoveries.

**WHEREFORE**, the Trustee respectfully requests the entry of the Proposed Order granting the Motion and providing for such other and further relief as may be appropriate.

*[Remainder of Page Intentionally Left Blank]*

Dated: June 27, 2025

Respectfully submitted,

*/s/ R. Michael Bolen*
R. Michael Bolen (MSB No. 3615)
HOOD & BOLEN, PLLC
3770 Highway 80 West
Jackson, Mississippi 39209
Telephone: (601) 923-0788
Facsimile: (601) 922-2968
rmb@hoodbolen.com

*Counsel to Dawn M. Ragan, Chapter 11 Trustee for Hugoton Operating Company, Inc., and El Dorado Gas & Oil, Inc.*

-and-

Nancy Ribaudo
Texas Bar I.D. 13447300
Katherine T. Hopkins
Texas Bar I.D. 24070737
KELLY HART & HALLMAN LLP
201 Main St., Ste. 2500
Fort Worth, TX 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280
nancy.ribaudo@kellyhart.com
katherine.hopkins@kellyhart.com

*Counsel to Dawn M. Ragan, Chapter 11 Trustee for Hugoton Operating Company, Inc., and El Dorado Gas & Oil, Inc., and Bluestone Natural Resources II - South Texas, LLC, and World Aircraft, Inc.*

-and-

Patrick A. Sheehan
SHEEHAN & RAMSEY, PLLC
429 Porter Avenue
Ocean Springs, MS 39564
Telephone: (228) 875-0572
Facsimile: (228) 875-0895
Pat@sheehanramsey.com

*Counsel for Bluestone Natural Resources II - South Texas, LLC, and World Aircraft, Inc.*

---

**TRUSTEE'S MOTION FOR SUBSTANTIVE CONSOLIDATION**                    **PAGE 27**

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing Motion to be served via the Court's CM/ECF system on those parties requesting such electronic notice on June 27, 2025.

U. S. Trustee
Suite 6-430
501 E. Court St.,
Jackson, Mississippi 39201
USTPRegion05.JA.ECF@usdoj.gov

/s/ R. Michael Bolen
R. Michael Bolen

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| **In re:** | § | **Case No. 23-51715-JAW** |
| | § | |
| **El Dorado Gas & Oil, Inc., et al.,[1]** | § | **Chapter 11** |
| | § | |
| **Debtors.** | § | **(Jointly Administered)** |
| | § | |

## ORDER GRANTING THE TRUSTEE'S MOTION FOR SUBSTANTIVE CONSOLIDATION OF THE DEBTORS AND EL DORADO OIL & GAS, INC.

Upon consideration of the *Motion for Substantive Consolidation of the Debtors and El Dorado Gas & Oil, Inc.* (the "Motion")[2] filed by Dawn M. Ragan (the "Trustee"), the duly appointed chapter 11 trustee for El Dorado Gas & Oil, Inc. ("El Dorado"), and Hugoton Operating Company, Inc. ("Hugoton"), and in that capacity, the Independent Manager of the debtor, Bluestone Natural Resources II - South Texas, LLC ("Bluestone"), and the Independent Director of the debtor, World Aircraft, Inc. ("World Aircraft", and together with El Dorado, Hugoton, and

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: El Dorado Gas & Oil, Inc. (4581); Hugoton Operating Company, Inc. (3245); Bluestone Natural Resources II - South Texas, LLC (4581); and World Aircraft, Inc. (4581).

[2]    Capitalized terms used herein but not otherwise defined shall have the meaning given to them in the Motion.

---

Bluestone, the "Debtors"), for the entry of an order approving the substantive consolidation of Hugoton, El Dorado, Bluestone, and World Aircraft, as the Debtors, along with EDOG, pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"); and this Court having reviewed the Motion; and the Court having considered the evidence in support of the Motion; and the Court having found that the relief granted herein is in the best interests of Debtors, their estates, and their creditors; and this Court having further determined that the legal and factual bases set forth in the Motion establishes just cause for the relief granted herein; and after due deliberation and good and sufficient cause appearing therefor;

**IT IS FOUND AND DETERMINED THAT:[3]**

A.      This Court has jurisdiction over the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334.

B.      Consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b).

C.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      The creditors of the Entities viewed the Entities as a single economic unit when providing goods and/or services and/or engaging in business with the Entities.

E.      The affairs of the Entities are so entangled that substantive consolidation for the purpose of administering estate assets and making distributions would benefit all creditors.

F.      The Trustee would expend more time and resources than she would recover if tried to disentangle the Entities' affairs.

---

[3]      Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact, when appropriate. *See* FED. R. BANKR. P. 7052.

---

ORDER GRANTING TRUSTEE'S MOTION FOR SUBSTANTIVE CONSOLIDATION                                                       PAGE 2

G.     The Trustee has provided adequate and sufficient notice of Motion and the relief sought therein.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     The Motion is granted.

2.     Any objection to the Motion that has not been withdrawn, waived, or settled, and all reservations of rights included in such objection, is overruled.

3.     The bankruptcy estates of El Dorado, Hugoton, World Aircraft, and Bluestone, as the Debtors, are substantively consolidated along with EDOG with the results that the assets and liabilities of and claims against the Entities, respectively, are consolidated for purposes of administration of the estates and distribution of assets to creditors.

4.     Notwithstanding the foregoing, nothing in this Order is intended to nor shall be construed as impacting the legal and corporate structures of the Debtors nor affecting pre- and post-petition creditor liens and lien rights or the collateral subject thereto,

5.     The terms of this order and the relief granted herein are effective immediately.

6.     To the extent that this Order is inconsistent with any prior order or pleading, the terms of this Order shall govern.

7.     This Court hereby expressly retains jurisdiction over all persons and entities to enforce the terms of this Order and to adjudicate any and all disputes in connection herewith.

**### END OF ORDER ###**

---

Submitted by:

*/s/ R. Michael Bolen*
R. Michael Bolen (MSB No. 3615)
HOOD & BOLEN, PLLC
3770 Highway 80 West
Jackson, Mississippi 39209
Telephone: (601) 923-0788
Facsimile: (601) 922-2968
rmb@hoodbolen.com

*Counsel to Dawn M. Ragan, Chapter 11 Trustee for
Hugoton Operating Company, Inc. and El Dorado
Gas & Oil, Inc.*

-and-

Nancy Ribaudo
Texas Bar I.D. 13447300
Katherine T. Hopkins
Texas Bar I.D. 24070737
KELLY HART & HALLMAN LLP
201 Main St., Ste. 2500
Fort Worth, TX 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280
nancy.ribaudo@kellyhart.com
katherine.hopkins@kellyhart.com

*Counsel to Dawn M. Ragan, Chapter 11 Trustee for
Hugoton Operating Company, Inc. and El Dorado
Gas & Oil, Inc. and Bluestone Natural Resources II
- South Texas, LLC and World Aircraft, Inc.*

-and-

Patrick A. Sheehan
SHEEHAN & RAMSEY, PLLC
429 Porter Avenue
Ocean Springs, MS  39564
Telephone: (228) 875-0572
Facsimile: (228) 875-0895
Pat@sheehanramsey.com

*Counsel for Bluestone Natural Resources II -
South Texas, LLC and World Aircraft, Inc.*

---