IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE:<br><br>EL DORADO GAS & OIL, INC., et al.,<br>Debtors. | Case No. 23-51715-JAW<br>(Jointly Administered) |
| IN RE:<br><br>ESCAMBIA OPERATING COMPANY, LLC; ESCAMBIA ASSET COMPANY, LLC; and BLUE DIAMOND ENERGY, INC.,<br>Debtors. | Case No. 23-50491-JAW |
| DAWN M. RAGAN, CHAPTER 11 TRUSTEE FOR HUGOTON OPERATING COMPANY, INC.,<br>Plaintiff,<br><br>v.<br><br>SILVER FOX OIL & GAS LLC,<br><br>Defendants. | Adv. No. 24-06025-JAW<br><br><br><br>United States Courthouse<br>501 East Court Street<br>Jackson, MS 39201<br><br>March 31, 2026<br>11:01 a.m. |

TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE ON DKT. NOS. 945, 997, 1092, 1459, 1734, 1739, and 1742

BEFORE THE HONORABLE JAMIE A. WILSON
UNITED STATES BANKRUPTCY COURT JUDGE

TELEPHONIC APPEARANCES:

| | |
|---|---|
| For the Debtor-in Possession, El Dorado Gas & Oil, Inc., Bluestone Natural Resources II - South and World Aircraft, Inc.: | Sheehan & Ramsey, PLLC<br>BY: ROBERT ALAN BYRD, ESQ.<br>PATRICK A. SHEEHAN, ESQ.<br>429 Porter Avenue<br>Ocean Springs, MS 39564 |
| Audio Operator: | Candice Ramage |

Proceedings recorded by electronic sound recording, transcript produced by a transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail: jjcourt@jjcourt.com**

**(609) 586-2311 Fax No. (609) 587-3599**

TELEPHONIC APPEARANCES (Cont'd):

| | |
|---|---|
| For Chapter 11 Trustee Dawn Ragan: | Hood & Bolen, PLLC<br>By: R. MICHAEL BOLEN, ESQ.<br>3770 Highway 80 West<br>Jackson, MS 39209 |
| | Kelly Hart & Hallman LLP<br>By: KATHERINE HOPKINS, ESQ.<br>NANCY RIBAUDO, ESQ.<br>201 Main Street, Suite 2500<br>Fort Worth, TX 76102 |
| For Chapter 7 Trustee Dwayne Murray: | Stewart Robbins Brown & Altazan, LLC<br>By: PAUL DOUGLAS STEWART, JR., ESQ.<br>301 Main St., Suite 1640<br>Baton Rouge, LA 70801 |
| For an Interested Insurer: | Phelps Dunbar, LLP<br>By: HEATHER E. MURPHY, ESQ.<br>2602 13th Street, Suite 300<br>Gulfport, MS 39501 |
| For Eastern Energy Services, Inc.: | Copeland Cook Taylor & Bush<br>By: CHRISTOPHER H. MEREDITH, ESQ.<br>P.O. Box 6020<br>Ridgeland, MS 39158 |
| For the Alabama Department of Environmental Management: | Alabama Department of Environmental Management<br>By: MARY-FRANK BROWN, ESQ.<br>1400 Coliseum Boulevard<br>Montgomery, AL 36110 |
| For First Service Bank: | Okin Adams Bartlett Curry LLP<br>By: DAVID CURRY, JR., ESQ.<br>1113 Vine Street<br>Suite 240<br>Houston, TX 77002 |
| | Butler, Snow, O'Mara, Stevens & Cana<br>By: JACK A. CRAWFORD, ESQ.<br>P.O. Drawer 22567<br>Jackson, MS 39225 |
| For the Texas River Commission: | Office of the Attorney General<br>By: SAHRISH KHAN SOLEJA, ESQ.<br>LAYLA MILLIGAN, ESQ.<br>P.O. Box 12548<br>Austin, TX 78711 |

TELEPHONIC APPEARANCES (Cont'd):

| | |
|---|---|
| For Trustee Drew McManigle: | Bracewell LLP<br>By: BRYAN S. DUMESNIL, ESQ.<br>BRADLEY J. BENOIT, ESQ.<br>Bracewell LLP<br>711 Louisiana, Suite 2300<br>Houston, TX 77002 |
| | Maynard Cooper & Gale, PC<br>By: EVAN N. PARROTT, ESQ.<br>11 North Water Street, Ste. 24290<br>RSA Battle House Tower<br>Mobile, AL 36602 |
| For American National Insurance Company and Resource Strategies, LLC: | Baker Donelson<br>By: ALAN LEE SMITH, ESQ.<br>BENJAMIN YOUNG FORD, ESQ.<br>100 Vision Drive, Suite 400<br>Jackson, MS 39211 |
| For Metropolitan Life Insurance Company: | Adams and Reese, LLP<br>By: TIMOTHY J. ANZENBERGER, ESQ.<br>1018 Highland Colony Parkway<br>Suite 800<br>Ridgeland, MS 39157 |
| For the Office of the U.S. Trustee: | Office of the U.S. Trustee<br>By: ABIGAIL M. MARBURY, ESQ.<br>501 East Court Street<br>Suite 6-430<br>Jackson, MS 39201 |
| For the Bracken Group: | Phelps Dunbar, LLP<br>By: SARAH BETH WILSON, ESQ.<br>1905 Community Bank Way, Ste. 200<br>Flowood, MS 39232 |
| For Eastern Energy Services: | By: DANNY COLLIER, ESQ. |
| For American National Insurance Company: | By: JOE FULCHER, ESQ. |

- - -

(Proceedings commenced at 11:00:52 a.m.)

THE COURT: All right. Good morning everyone. We'll go ahead and get started on the 11 a.m. docket. We've got multiple matters this morning in the El Dorado and Escambia cases.

I'll go ahead and take notices of appearance. I'll just start with our role call. If I don't call your name, at the end I'll give you an opportunity to appear.

Please go ahead and if you're not speaking, put your phone on mute.

All right. Ms. Ragan, are you here on behalf of El Dorado? Ms. Ragan, are you present?

Mr. Bolen?

MR. BOLEN: Present, Your Honor. And I will send her an e-mail to be sure she's aware, remembers the phone call.

THE COURT: Okay. Ms. Ribaudo?

MS. RIBAUDO: Present, Your Honor.

THE COURT: Katherine Hopkins?

MS. HOPKINS: I'm here, Your Honor. And just as an update. We had a (indiscernible) with Ms. Ragan this morning. She was intending on attending this hearing. But I do know that she's been having some connectivity issues with her phone.

THE COURT: Okay.

MS. HOPKINS: And so I've also reached out (indiscernible) her trying to join as soon as possible.

THE COURT: All right. Thank you.

MS. RAGAN: I am on, Your Honor. It's Dawn Ragan, the Trustee, and I apologize for being late.

THE COURT: Thank you, Ms. Ragan.

Dwayne Murray, the Chapter 7 Trustee for Escambia?

MR. MURRAY: Good morning, Your Honor. This is Dwayne Murray.

THE COURT: Good morning, Mr. Murray. Do you have other professionals on the line with you this morning?

MR. MURRAY: Yes, Your Honor. I have counsel that's been Court approved by yourself. Mr. Douglas, Paul Douglas Stewart is with us.

MR. STEWART: Good morning, Your Honor. Doug Stewart for Mr. Murray.

THE COURT: Good morning. Anyone else?

MS. MURPHY: Yes, Your Honor, this is --

UNIDENTIFIED SPEAKER: Your Honor, this is (indiscernible) -- oh, I'm sorry.

MS. MURPHY: I'm sorry, Your Honor. This is Heather Murphy from Phelps Dunbar. We represent one of the interested insurers. We don't have a party.

THE COURT: I'm sorry. Heather, what was your last name?

MS. MURPHY: Murphy, M-u-r-p-h-y.

THE COURT: Okay. And who do you represent?

MS. MURPHY: We represent one of the insurers of (indiscernible).

THE COURT: Okay.

MS. MURPHY: We do not have a party in the bankruptcy case.

THE COURT: All right. Thank you, Ms. Murphy.

MS. MURPHY: Thank you.

THE COURT: Brooke Altazan?

MR. MEREDITH: Good morning, Your Honor. This is Christopher Meredith for Eastern Energy Services.

MS. BROWN: Good morning, Your Honor. This is Mary Frank Brown for the Alabama Department of Environmental Management on Escambia.

THE COURT: Okay.

MR. BYRD: Judge, Bob Byrd. I'm late to the party, but I entered an appearance for Pat Sheehan.

THE COURT: All right. Thank you, Mr. Byrd.

MR. BYRD: Yes.

MR. SHEEHAN: Your Honor --

MR. CURRY: Good morning, Your Honor. This is David Curry on behalf of First Service Bank.

THE COURT: Good morning, Mr. Curry.

Mr. Sheehan, was that you I heard?

MR. SHEEHAN: Yes, it was. I'm here, Your Honor.

THE COURT: All right.

MR. CRAWFORD: This is Jack Crawford on behalf of First Service Bank.

THE COURT: All right. Thank you, Mr. Crawford.

MS. SOLEJA: Good morning, Your Honor. This is Sahrish Soleja from the Texas Attorney General's Office appearing on behalf of the Texas River Commission. And with me on the line is Layla Milligan.

THE COURT: Thank you.

MR. DUMESNIL: Your Honor, this is Bryan Dumesnil and Brad Benoit, special litigation counsel for the Trustee in the Montela litigation.

THE COURT: Thank you.

MR. PARROTT: Good morning, Your Honor. This is Evan Parrott, also special litigation counsel for the Trustee in the Montela litigation.

THE COURT: Thank you.

MR. COLLIER: Yes, Your Honor. Danny Collier for Eastern Energy Services, Incorporated, in a similar case -- the same case in Mobile.

THE COURT: Okay. Thank you, Mr. Collier.

MR. SMITH: Yes, Your Honor. Alan Smith on behalf of American National Life Insurance, as well as Resource Strategies.

THE COURT: All right. Thank you, Mr. Smith.

MS. WILSON: Sarah Beth Wilson for the Bracken Group.

THE COURT: Thank you, Ms. Wilson.

MR. ANZENBERGER: Good morning, Your Honor. Tim Anzenberger for Metropolitan Life Insurance Company.

THE COURT: Thank you, Mr. Anzenberger.

MR. FORD: Your Honor, this is Ben Ford.

THE COURT: Thank you, Mr. Ford.

MR. FORD: On behalf of the same parties represented by Alan Smith.

THE COURT: All right. Thank you, Mr. Ford.

MS. BAILEY: Good morning, Your Honor. This is Candide Bailey and Hugh Franberg (phonetic) from Resource Strategies.

THE COURT: Thank you.

MR. FULCHER: Good morning, Your Honor. This is Joe Fulcher on behalf of American National Insurance Company.

THE COURT: Thank you, Mr. Fulcher.

MS. MARBURY: Your Honor, this is Abbie Marbury with the U.S. Trustee’s Office.

THE COURT: Thank you. Anyone else on the line that needs to make an appearance this morning? All right. We’ll go ahead and get started.

Ms. Ramage sent out a copy of the Court’s docket this morning. Hopefully most of you received a copy. I thought it might be helpful for you to be able to see the docket I’m working from since we’ve got so many matters to cover this

morning.

We're going to start with the Ragan v. Silver Fox Oil & Gas Adversary, Adversary 24-6025. We're set this morning on a status conference. Ms. Hopkins or Ms. Ribaudo --

MS. HOPKINS: Yes, Your Honor.

THE COURT: -- do you want to -- go ahead.

MS. HOPKINS: Yes, Your Honor. Katherine Hopkins on behalf of Dawn Ragan, the Chapter 11 Trustee.

As Your Honor may recall, Silver Fox the defendant was actually commenced, after we filed our adversary proceeding, it commenced a Chapter 7 bankruptcy case here in Texas.

The Chapter 7 Trustee in that case has now dismissed Silver Fox's bankruptcy case so we could potentially move forward against Silver Fox. But there is a question as to the likelihood of recoverable assets.

In the interim we have been in discussions with Kinder Morgan regarding the matter. If Your Honor recalls, Kinder Morgan was a purchaser of gas from Hugoton and is the party that improperly submitted funds to Silver Fox instead of the estate.

We have now agreed to a settlement with Kinder Morgan. We are in the process of preparing a settlement agreement and 9019 motion for filing in the bankruptcy case. Once that is approved we will be able to dismiss the adversary

proceeding.

THE COURT: Okay. Great. What's the ETA on that 9019?

MS. HOPKINS: Hopefully it will be in the next couple of weeks. I know that we have been -- we have settlement in theory, but we do not have the specific agreed upon settlement agreement yet on both sides. So that's what we're working on. I'm hoping in the next week or two though.

THE COURT: All right. I'm going to go ahead and take this case off status and just look for the 9019.

MS. HOPKINS: Sure.

THE COURT: All right.

MS. HOPKINS: Thank you, Your Honor.

THE COURT: Thank you. The next matter is the notice of proposed abandonment of property and estate filed by Ms. Ragan at Docket 1734 and the objection filed by the Railroad Commission of Texas at Docket 1739.

And then we also have the amended application for administrative expenses filed by the Railroad Commission of Texas at 1742.

Ms. Hopkins, what's the status of these documents?

MS. HOPKINS: Yes, Your Honor. And just to kind of give some -- to put everything into context here. As the Court recalls the Trustee has engaged in significant oil and gas assets and other estate asset sales over the term of her

appointment.

The vast majority of the oil and gas assets however have been sold, but for the remaining wells that are subject to our notice of abandonment.

While the Trustee has extensively marketed those remaining oil and gas assets, there's very little interest from third parties as to a potential sale.

And just for the Court's knowledge, the Trustee is still to this day trying effectively as a Hail Mary to try to sell these assets if she can, but that is not proving fruitful so far and she has concerns about that ever occurring.

So in order to move these cases forward it was necessary for her to request disposition of the assets via abandonment.

We spoke to counsel for the Railroad Commission last week. We understand that the parties disagree as to the proposed abandonment of these assets. While we are going to continue to try to sell these again, as I mentioned, we think that is a long shot in light of where we are and the status of the assets.

But, you know, we do think it's important for disposition of the wells to occur in the near future. For one it will decrease costs related to the ongoing obligations related in connection with the wells and also it will allow the Trustee to assess the next steps in these cases as a whole.

Because of this we would ask for a hearing to occur on the notice of abandonment. Perhaps, you know I know we're coming back in May, I think we have two different dates. So depending on the Court's availability, we would request a hearing date in May.

THE COURT: What about May 20th?

MS. HOPKINS: Yes, Your Honor, that would work. I believe we're there on the Park Energy motions to dismiss. So that would work for our side.

THE COURT: Okay. Ms. Soleja, would May 20th work for you and your counsel?

MS. SOLEJA: Yes, Your Honor.

THE COURT: Okay.

MR. CURRY: And, Your Honor, this is David Curry for First Service Bank.

And we'll file a response as inappropriate. We obviously support the abandonment motion. On that, I just wanted to let the Court know that we intended to be joining and supporting the Trustee's request in opposition to the administrative expense request.

THE COURT: Okay. If that's the case, Mr. Curry, it's May the 20th. Are you going to be available?

MR. CURRY: Yes, ma'am, I'll be there for the Park Energy as well.

MS. HOPKINS: And, Your Honor, just to clarify one

issue. We do believe that the, whatever happens with the notice of abandonment determination will ultimately impact the Railroad Commission's admin claim.

So we would request that a determination of the abandonment occur first and then, if needed, the Railroad Commission can certainly have time to amend its admin claim. We can certainly have time, subject to the Court's approval of course, to discuss and potentially negotiate with the Railroad Commission. If needed we would want to reply and file a response to that admin claim since none has been filed at this time. And then ultimately if we needed a hearing.

But we do believe that a determination as to the abandonment itself needs to occur first because that will impact the admin claim.

THE COURT: All right. Why don't we set the amended application for the administrative expenses for status only on May 20th? And then I think after the hearing on May 20th I'll have a better idea of how long it's going to take if I have to issue an opinion on the objection to the notice of abandonment. Why don't we just set the amended application for administrative expenses for status just so that we kind of keep up with it? And then we'll figure out on May 20th when that needs to be heard.

MR. CURRY: And, Your Honor, for briefing on the abandonment issue, do you want to set a deadline for us to

respond?

THE COURT: Yes, sir. We're going to re-notice it out and when we re-notice it out there will be a response deadline in the notice.

MR. CURRY: Excellent. Thank you.

MS. HOPKINS: And yes, Your Honor, the Trustee also intends to file supplemental briefing in response to the Railroad Commission's objection.

THE COURT: All right. Anything else on those two matters?

MS. HOPKINS: Not from the Trustee, Your Honor.

THE COURT: All right. We'll take up in the El Dorado 23-51715 and in the Escambia case 23-50491, let's talk about the motions to approve compromise now that we have Mr. Murray on board.

MR. MURRAY: Good morning, Your Honor. This is Dwayne Murray. Mr. Stewart, would you take the lead on that?

MR. STEWART: Of course. Good morning, Your Honor. Mr. Stewart or Doug Stewart for the Escambia cases.

We have spoken with counsel for the -- Ms. (indiscernible) and we have discussed this with the former Chapter 11 Trustee, both parties of which have considered this long-running motion moot.

The parties haven't had a chance to discuss yet, and I heard him on the phone this morning with my colleague from

Houston regarding FSB and their view of the motion and based on those conversations, and I need to speak with FSB, we would ask if this can be bumped to May 20th for another status.

THE COURT: Mr. Stewart, let me make sure I heard you correct. Is it did you say that your position was subject to speaking to Mr. Curry, but you think the motion is going to be moot now?

MR. STEWART: That seems to be the --

THE COURT: Okay.

MR. STEWART: -- the general thread of our discussions. It’s been pending since 2024, a lot of water has gone under the bridge since then. But subject to speaking to Mr. Curry, I think our position would be that we would probably withdraw it unless there’s some reason to keep it up.

THE COURT: Okay. All right. So I can set it for a status only on May the 20th. But if all the parties determine that it is moot, you all can just withdraw it before then and it will fall off the docket.

MR. STEWART: Thank you, Your Honor.

THE COURT: I’m going to do May 20th status only on those two matters.

All right. In the Escambia Operating case the next matter is motion for relief from the automatic stay and to compel abandonment of the Title V Air Permit filed by the Alabama Department of Environmental Management at Docket 945.

Mr. Murray, the deadline has expired to object, but I kept this on the docket because we knew you were coming on board and I wanted to give you an opportunity to take a look at that before I granted it by default basically.

MR. MURRAY: Good morning, Your Honor. This is Dwayne Murray, the Chapter 7 Trustee.

Judge, we have been looking at that letter and then again I've had Mr. Stewart to reach out to the various parties. Mr. Stewart, if you want to let the Court know where we are at this time?

MR. STEWART: Sure. Your Honor, Doug Stewart for the Trustee.

We have spoken with our prior purchasers of substantially all of the assets of the Escambia estate and have spoken to the regulatory authorities. The purchasers seem to have had some misapprehension of how this permitting process is going to work.

We had a call between all of the parties last week and I believe the regulatory authority and the purchasers are going to get together this week to see if they can get on the same page.

We would appreciate you preserving the Trustee's rights on this motion. And if the regulatory authority is amenable, we would prefer pushing this to May 20th either for a hearing with a new response date for the Chapter 7 Trustee or

for a continued status conference to see if the parties can get on the same page and get this resolved.

The permit is said to be of critical importance by the purchasers. It doesn't appear to us that it was included in the same and assumptions that were made. And we are just needing a little time to see if we can work through the issues.

THE COURT: Ms. Brown, May 20th suitable?

MS. BROWN: Yes, Your Honor, we agree to that.

THE COURT: All right. Let's talk about the deadline for the Chapter 7 Trustee. How far out do you want to back up from the --

MR. STEWART: Your Honor --

THE COURT: Go ahead.

MR. STEWART: Are we pushing it to the 20th for status or are we setting it for a hearing?

THE COURT: I mean can we get it resolved by then? I would like to go ahead and get some of this stuff taken care of. But if you're telling me that there's some issue and you need more time, then I'll give you more time on it.

MR. STEWART: I would prefer that it be a status conference because I think whether it's going to be worked out is largely going to be between the purchasers and the regulatory authority. I think it's really a matter of money and the timing of the payment of money.

THE COURT: Okay.

MR. STEWART: So if the regulatory authority is amenable, I would like to ask it be set for status conference without a response deadline at the moment.

THE COURT: Ms. Brown, any objection to status only on May 20th?

MS. BROWN: No, ma'am. We'll agree to the status conference on this on May 20th.

THE COURT: All right. We'll do status only on May 20th.

All right. The next matter in the Escambia case is the Chapter 11 Trustee's motion to approve compromise and settlement with Moncla Workover and Drilling Operations, LLC at Docket 997.

And along with that, the Chapter 11 Trustee's emergency motion to enforce automatic stay and award sanctions at 930.

Mr. Stewart, have you had an opportunity to take a look at these matters?

MR. STEWART: We have, Your Honor. We have probably spent the lion's share of our time on these matters and discussing them with our special counsel with the objectors, the working interest owners' counsel, and looking at the pleadings filed by the Moncla parties.

We are hopeful that we can work out a resolution with the working interest owners. On the other hand we believe that

the posture of the settlement with the Moncla parties allows it to move forward because it basically now has a condition subsequent that certain things must happen with the working interest owners for the settlement, even if approved by the Court, to be effective. We believe that that should be able to go forward.

And we intend to move forward with the Chapter 11 Trustee's stay relief motion if we're not able to work out a compromise with the working interest owners. I hesitate to ask for that to be set for hearing on May 20th because I'm not sure how much time the parties need to prepare for that.

Although it seems largely a legal issue I would think, I would be interested to hear what the working interest owners have to say as far as a schedule goes. But we would like to get those moving forward.

THE COURT: Mr. Smith or Mr. Ford?

MR. SMITH: Yes, Your Honor, Alan Smith. I'm happy to address that and I appreciate Mr. Stewart updating the Court.

And I would also say just for the Court's benefit. We did have an initial preliminary discussion with Mr. Stewart on February 19th about the issues presented by both of these motions and we really haven't had any more communications subsequently since then. But based on that initial call we're optimistic that we're at least on the same page in identifying

issues.

Those key issues being the same ones that were raised at the initial hearing before Your Honor when the former Chapter 11 Trustee filed the motion for sanctions, that the authority to act, issue, and pursue these deep well damage claims as well as the question of whether those working interest owners of non-debtors have somehow become Section 541 property of the estate.

My client's position is that it is not possible to move forward with either the 9019 settlement motion because of the contingencies built into it, or the sanctions motion, until the Court, being this Court, has adjudicated the authority to act issue, as well as the property estate issue, regarding the working interest ownerships of non-debtors.

So our position at this point we would like to see these matters reset for a status conference on May the 20th with the others. In the interim the idea being we have further discussions with Mr. Stewart, Chapter 7 Trustee's counsel, and see what progress we can make there.

Thank you, Your Honor.

THE COURT: Mr. Stewart, we have --

MR. STEWART: Your Honor --

THE COURT: Yes, go ahead.

MR. STEWART: May I make a brief response to that?

THE COURT: Sure.

MR. STEWART: I believe that the issues are framed for the Court. I believe that the Court's prior status conference with the Chapter 11 Trustee and with the working interest owners framed the issues that haven't really changed. And I think the issues presented by Mr. Smith are issues that would be resolved through those motions rather than a gating issue as a precursor to those motions. I don't really understand that argument.

But I'm amenable to resetting this for status really to take a hard run at trying to come to some kind of resolution rather than litigating it.

That said, I don't see any impediment in particular in resolving the compromise with the Monclas due to the condition subsequent language that's been put in it.

Might it be somewhat a waste of the Court's resources to resolve a motion that has a condition subsequent that requires the resolution of a second motion? Perhaps. I can understand that argument.

But in the meantime, the Trustee is amenable to resetting these two for status on May 20th with the hope of making a run at resolving them.

THE COURT: Mr. Stewart, let me ask you, for all these status conferences we haven't talked about whether or not they're going to be telephonic or in person. Were you planning on one or the other?

MR. STEWART: Well I guess that kind of depends on whether they're all just telephonic status conferences. If they're all status conferences, I would prefer they be telephonic or Zoom, however the Court wishes to do it. But if there's going to be some type of hearing and I'm going to have to be there anyway, then it's really of no moment to me.

THE COURT: Well the El Dorado motions, the El Dorado abandonment motion, that will be in person. If we're just going to do --

MR. STEWART: I don't think that impacts Escambia though, does it?

THE COURT: Yes. No, I don't think so. But if, you know, there's some value in getting everybody in the room. But if we're truly just going to do status, I don't want you to incur the cost in coming over here.

MR. STEWART: I would agree with that, Your Honor.

MR. SMITH: Your Honor, Alan Smith, if I may speak up?

THE COURT: Sure.

MR. SMITH: Quite frankly, I'll telegraph to the Court, if we cannot work with Mr. Stewart and make some substantial progress by the 20th, quite frankly I was going to ask the Court to potentially address the issue and maybe directing these cases to mediation, similar to what the judge did in El Dorado with my other client Mestena, it resulted in a

settlement. There were some highly complex issues there about lease lapse and pipelines, et cetera.

It’s just a thought I had. So, again, maybe it does help to have us there to be able to go down that route, if mediation becomes something that’s going to be talked about.

THE COURT: Well why don’t we, we’ll set it for telephonic status on May the 20th. If something changes between then, then you all can notify the Court and we can pivot. I can either reschedule it for an in person on another date or, if the parties agree to mediation, I can get you an order on mediation.

But why don’t we just tentatively put it on May 20th as status telephonic only and then you all circle back to the Court and let me know what’s needed.

MR. STEWART: Thank you, Your Honor.

MR. SMITH: Yes, Your Honor. Thank you.

THE COURT: I’m going to skip to the end of the 11 a.m. docket and go ahead and take up in the Escambia Operating case, the motion to terminate Kroll at Docket 1092.

MR. STEWART: Thank you, Your Honor. Doug Stewart for Dwayne Murray, Trustee.

We received the Court’s redline of the order yesterday and wanted to talk through a couple of issues in it if we may?

THE COURT: Okay. I think I solved one of the

issues.

MR. STEWART: So the --

THE COURT: I'm sorry. I was going to go ahead and tell you one --

MR. STEWART: My --

THE COURT: -- of the revisions that we had made yesterday about the Trustee giving written notice to all the entities on the mailing matrix, I actually don't think we need that provision anymore because it looks like the 341 notice takes care of that. So if that was going to be your issue today, I think we can take that out and resolve that.

MR. STEWART: Well that was my big issue.

THE COURT: Okay.

MR. STEWART: Because I don't know if we have enough money to pay that.

THE COURT: Well --

MR. STEWART: To (indiscernible) out on the matrix.

THE COURT: I didn't catch the 341 notice --

MR. STEWART: The other issue is --

THE COURT: -- until this morning.

MR. STEWART: Right. I think I was hoping that might resolve that issue.

THE COURT: Okay.

MR. STEWART: The other issue I have is just making sure I understand the reason for the Court's changes in

Paragraph 2 because this is language that we have used in other --

THE COURT: Jurisdictions.

MR. STEWART: -- courts in particular with Kroll on this to make sure that we end up with a -- I mean the sole reason I'm interested in that paragraph is to make sure that we end up with a claims register in PACER just like we would have if Kroll had not been the claims administrator.

And am I understanding correctly that if they transmit all original proofs of claim to the Clerk of Court that that's what we'll end up with?

THE COURT: Yes. And there is some background to this. When Kroll was originally retained, you know they have a standard order that they use in multiple jurisdictions, but it just doesn't work in Jackson, Mississippi.

And so we revised their order on employment and what the scope of their duties were. The Clerk's Office, their main concern was that they are the ultimate keeper of all of the claims and so we want to have one claims registry and there's only one claims registry, is the one that the Clerk of Court manages. And so that's why we have kind of made all these changes.

So, yes, there was a little bit of background on this one. But we took out Paragraph 2(a), (b), (c), and then changed (d), so that all of the original proofs of claim come

to the Clerk of Court.

When we receive all those proofs, we will go through them and double check and make sure all of the original proof of claims are on our registry so that there is one complete registry and all the proof of claims are accounted for is our intention.

MR. STEWART: Well that's exactly what I was hoping for. So as long as I have a good registry somewhere.

THE COURT: Yes.

MR. STEWART: And I would prefer it be at the Clerk of Court so that works for us.

THE COURT: Yes. And the --

MR. STEWART: May we add in that the spreadsheet have any kind of compiled data that Kroll has prepared would be sent to counsel?

THE COURT: Yes.

MR. STEWART: You struck that part of (d).

THE COURT: Are you talking about Paragraph (c) or (b)?

MR. STEWART: (d).

THE COURT: Or (d). I'm sorry.

MR. STEWART: Paragraph (d) Romanette ii.

THE COURT: Okay. Spreadsheets to counsel.

MR. STEWART: Kroll often has --

THE COURT: I got it.

MR. STEWART: -- very helpful spreadsheets that they have used to accumulate things that are helpful.

THE COURT: Okay. I will change it to say --

MR. STEWART: And I can revise that paragraph.

THE COURT: Yes. Okay. Well, yes, if you want to volunteer, feel free. I'll let you revise that.

The other reason, just so you know, is the reason why the Clerk's Office wants to hold all the original proof of claims is that they're required to hold those for two years after closing. So you'd have to turn them over to us at some point anyway. So I think it's just better for us to get them now.

MR. STEWART: It's always better for the Court to have originals rather than me, Your Honor.

THE COURT: Yes. All right, so if you want to make those few little revisions, I think that solves that. And you can just upload the order and I'll get that entered.

MR. STEWART: We will make those and upload the order today, Your Honor.

THE COURT: Okay. All right. So that gets us to the, well let me ask, anything else in either case before we get to the applications for compensation that we need to take up? All right. So --

MS. HOPKINS: Your Honor, Katherine Hopkins.

MR. STEWART: Not that I'm aware of, Your Honor.

THE COURT: Okay. Ms. Hopkins?

MS. HOPKINS: Yes, Your Honor. I just wanted, since there are so many parties-in-interest on, I just wanted to give a, and also let the Court know, to give a quick update on two other adversary proceedings that people may not be following.

THE COURT: All right.

MS. HOPKINS: With respect to Park Energy. Park Energy provided prepetition services to the, as well as post-petition services, to the estates and have alleged that and filed various proofs of claims, admin claims.

It also filed an adversary complaint alleging that it has a superior lien to, in comparison to FSB’s lien with respect to certain real property.

Both parties the, both defendants, the Trustee and FSB, have filed motions to dismiss the adversary complaint. There is a hearing to consider those motions scheduled for May 20th.

In addition the Trustee also filed an adversary proceeding against Bill Buffington and his entities related to certain debtor and non-debtor subsidiary World Ag land. Buffington is asserting various claims to this land and refuses to vacate the property.

Recently on the entered deadline Mr. Buffington filed a motion to extend that deadline. We were not provided with prior notice of that motion, nor the requested extension.

While the Trustee would normally agree to an extension and not have a problem there, she is trying to move this case forward as quickly as possible, since she views resolution of Mr. Buffington's claims against the debtors in World Ag's properties as an urgent matter because she's not receiving any payment there which she would otherwise, and she's unable to otherwise monetize these assets while Mr. Buffington remains on the property.

For that reason and just for purposes of the record the Trustee would like an opportunity to be heard in the future if there are any additional extensions requested. It's just important to her in light of the landscape here to keep this case moving forward as quickly as possible and to have resolution also as quickly as possible.

Thank you, Your Honor.

THE COURT: Ms. Hopkins, I take it you didn't see the Court's response to your e-mail about that continuance?

MS. HOPKINS: Yes, Your Honor, and are you referencing --

THE COURT: Then why are you bringing it up today? What's the issue today?

MS. HOPKINS: Yes, Your Honor. Just to make sure that the Court was aware fully --

THE COURT: Which part did you not understand?

MS. HOPKINS: Yes, Your Honor. I may have been a

little confused and I appreciate the Court's patience in my discussing this today and really just wanted to make sure all the parties were aware of the status here. But I understand and appreciate it.

THE COURT: Let me make the parties clear, including you, Ms. Hopkins.

MS. HOPKINS: Yes, Your Honor.

THE COURT: When counsel asked this Court for a short 20-day continuance to file an answer to complaint, we routinely give it all the time here as a matter of courtesy.

MS. HOPKINS: Yes, Your Honor.

THE COURT: If you had an objection, I gave you the opportunity to raise it and you declined it.

MS. HOPKINS: Yes, Your Honor. We had some concerns about further pushing back the time. And in light of the fact that the answer deadline was earlier than the hearing date, we understood that and wanted to go ahead and let that extension pass.

THE COURT: Correct. Because it was quicker to give Mr. Geno the 20 days he needed to answer the complaint than for me to set it for hearing. So, again, I don't understand what your complaining about this morning.

MS. HOPKINS: Yes, Your Honor. And I can explain that a little more.

Since we've been dealing with Mr. Buffington since

October, there has been many delays and requested extensions. I'll say it again. The Trustee as well as counsel, we are typically you know agreeable to extending those deadlines. However, there has just been a lot of requests and so this was really just --

THE COURT: Not to this Court.

MS. HOPKINS: -- with respect to --

THE COURT: Not to this Court. Maybe you had internal conversations with Mr. Buffington's people where you all had internal requests for extensions, but not with this Court.

MS. HOPKINS: Yes, Your Honor. And as a result we just wanted to make sure that to the extent there are future extensions this was just brought up.

But I apologize for, you know, any inconvenience or issue here. We understand the Court's position.

THE COURT: Anything else before we move on to the fee applications?

MS. HOPKINS: Not from the El Dorado Trustee, Your Honor.

THE COURT: Okay.

MR. CURRY: Your Honor --

THE COURT: Anything in the Escambia case?

MR. CURRY: Your Honor, David Curry. Real quick before we move on. And I have no comment about notice or

anything else. But I did want to ask for a clarification on the Park Energy hearing.

THE COURT: Okay.

MR. CURRY: I believe that from reading the notice it's noticed, it states that it's an evidentiary hearing. And we just wanted some clarification on that, if that was intentional or a form being that it's a hearing on a 12(b)(6) motion.

THE COURT: Yes, that's probably the form. Let me look at it real quick. Yes, it's the routine form. It's not evidentiary. It's just argument on the motion to dismiss.

MR. CURRY: Thank you, Your Honor.

UNIDENTIFIED SPEAKER: Judge, on the Chapter 7 side I don't think we have anything else.

THE COURT: All right. Thank you.

All right. Let's start talking about the applications for compensation in the El Dorado and the Escambia matters. Mr. Byrd, are you still there?

MR. BYRD: Yes, ma'am.

THE COURT: All right. We're set for evidentiary hearing, I believe it's May the 12th.

MR. BYRD: Yes, correct.

THE COURT: Are you going to have enough time to --

MR. BYRD: Can I bring something up, Judge?

THE COURT: Yes, sir. Go ahead.

MR. BYRD: As I'm very late to the party. I have a longstanding Mother's Day trip to Cashiers with my two sons, daughter-in-law, and two granddaughters. We're not supposed to get back to Gulfport until late in the evening of May 11th.

THE COURT: Okay.

MR. BYRD: I broached this with Dawn and Abbie yesterday. So I want to ask the Court to at least consider a brief period of time for a recess. I'm still trying to get my arms around Pat's fee applications.

THE COURT: Okay.

MR. BYRD: I've got three years of history trying to condense into a month or two so.

THE COURT: Let me ask. Let me ask the two Trustees. Ms. Ragan has filed a limited objection so I would expect her folks to be here for the hearing. But I have not heard from Mr. Murray in the Escambia. Mr. Murray, do you plan on coming in on this matter?

MR. STEWART: Your Honor, Doug Stewart for Mr. Murray. I believe we're going to leave this in the capable hands of the Office of the U.S. Trustee.

THE COURT: Okay.

MR. BYRD: And I placed a call to Mr. Murray this morning (indiscernible) 341s.

THE COURT: Okay.

MR. BYRD: And Pat has had continuing conversations

with Trustee Ragan and openly subject to Court approval they have reached a proposed agreement on fee reductions in her case.

THE COURT: Are you talking about the 75,000?

MR. BYRD: Yes.

MS. MARBURY: I'm sorry, Bob, could you repeat that last part?

MR. BYRD: In discussions between Pat and Ms. Ragan and her counsel about a proposed resolution of his fee applications in her consolidated cases.

THE COURT: Ms. Marbury, I believe it may be in the Trustee's limited objection at Docket 1755.

MR. BYRD: Yes.

THE COURT: I believe it may be contained in that pleading.

MS. MARBURY: I do recall it and I did review the limited response when Ms. Ragan filed it. So I'm more than familiar with the 75,000. I literally just did not understand or hear what Mr. Byrd

THE COURT: Oh, okay.

MS. MARBURY: -- had said at the end.

MR. BYRD: Judge, can I ask another question?

THE COURT: Sure.

MR. BYRD: Would the Court encourage Pat and I to try to reach some consensual agreement with the U.S. Trustee in

addition to Trustee Ragan?

THE COURT: Yes, I mean I, Mr. Byrd, I would certainly take a look at any kind of agreement among the parties.

MR. BYRD: Thank you.

MS. MARBURY: The UST is not opposed to that. We can certainly begin sitting down with Mr. Byrd and Mr. Sheehan and see if we can't work this out between now and May.

THE COURT: All right. Mr. Byrd, it is a lot, it is a lot to get your arms around. I cannot tell you how many hours we have spent going back and looking through all the applications, trying to match up the appendixes with the bank statements. It is a very heavy lift.

MR. BYRD: Yes. I can imagine.

THE COURT: It is a very heavy lift.

MR. BYRD: Yes.

THE COURT: And I'll tell you, from what we've seen, we're having trouble with the appendixes that were attached to the applications. We can't get the bank statements to reconcile with the appendixes.

MR. BYRD: Okay.

THE COURT: There's also some other things that --

MR. BYRD: Mr. Sheehan prepared those so I --

THE COURT: Right.

MR. BYRD: -- really can't comment.

THE COURT: There's some other things that I've noticed that are -- they're not mentioned in the application. One is Mr. Sheehan's retention in Worldwide Imports. I don't think that's mentioned in any of his disclosures. And as I recall, I think he received a $12,000 payment from Mr. Swarek in that case. But I never approved any fees in Worldwide Import and that's not mentioned anywhere.

The other thing that I have not seen, I haven't seen any employment agreements for any of the debtors yet. So maybe that will come out during the hearing, but I'm just kind of giving you the heads up today that I have not seen that.

MR. BYRD: Oh, thank you.

THE COURT: I haven't seen anything that would indicate how Mr. Sheehan checks for conflicts, if he has a conflicts report, I haven't seen anything like that in what I've seen so far.

It's also a little bit confusing. It looks like there were some prepetition bankruptcy work done for El Dorado, but I can't tell exactly when that work was done and what was done and how much was paid for that. That's a little bit fuzzy from what I'm reading.

MR. BYRD: Okay.

THE COURT: That's what I can think of off the top of my head this morning, Mr. Byrd.

MR. BYRD: Okay.

THE COURT: There is a couple of cases that have --

MR. BYRD: I appreciate it.

THE COURT: -- that have popped up that have caught my attention. One is National Distributors Warehouse Company and the cite for that case is 148 B.R. 558 (1992) and the other --

MR. BYRD: 148 B.R. 558.

THE COURT: I think it's 48 B.R.. It's either 148 or 48, Mr. Byrd, but the name of the case is National --

MR. BYRD: Yes, I put, I'm sorry, 148 B.R. 558.

THE COURT: And it's National Distributors.

MR. BYRD: Yes.

THE COURT: And the other one that's caught my attention recently as I've been trying to get prepared is Black & White Stripes, and that one is 623 B.R. 34, and that's a 2020 case.

MR. BYRD: 623, 34.

THE COURT: Yes, sir.

MR. BYRD: Thank you.

THE COURT: And I believe that one may have been Judge Glynn, but I can't remember off the top of my head, but that's where I'm at.

How far out do you think you need to go?

MR. BYRD: Just a couple of weeks.

THE COURT: Okay. Are we thinking --

MR. BYRD: So I don't once again disappoint my family with a work conflict over family.

THE COURT: Are you thinking we're going to be all day, Mr. Byrd, or half day?

MR. BYRD: Well it's probably best to err on the side of caution in case we can't get done by noon, so I'd say a full day.

THE COURT: Okay.

MR. BYRD: And if we get done early, everybody's happy.

THE COURT: It looks like I have May 26th, 27th, and 28th, but the 26th is the day after Memorial Day.

MR. BYRD: Yeah. How about the 27th then?

MS. MARBURY: Your Honor, I'm coming back on the 26th from a family wedding in Tallahassee.

THE COURT: Okay.

MS. MARBURY: The 27th can be a crunch.

MR. BYRD: 28th, Abbie?

MS. MARBURY: I could probably pull off the 28th.

MR. BYRD: Thank you.

THE COURT: We could do like May 28th or we can do June 10th or 11th.

MS. MARBURY: I have the 10th and 11th wide open.

MR. BYRD: And I have the 11th wide open.

THE COURT: I'm sorry. Did you all tell me the 11th

worked or didn't work?

MR. BYRD: That it does work.

THE COURT: Okay. Would you all rather have --

MS. MARBURY: Yes, Your Honor, June 11 works for both of us.

THE COURT: Okay. Would you all rather do it June the 11th?

MS. MARBURY: Yes, please.

MR. BYRD: If that's okay with you.

THE COURT: All right. We will send out a notice resetting that to June the 11th.

MR. BYRD: Judge, thank you very much --

THE COURT: Sure.

MR. BYRD: -- for the accommodation.

MS. MARBURY: Thank you.

THE COURT: In the meantime, if the parties are able to work out some resolution, contact the Court and we'll talk about how to effectuate that.

MR. BYRD: Yes, Judge.

THE COURT: All right. Anything else we need to take up this morning?

MR. BYRD: Not for me.

THE COURT: All right. We'll be adjourned. You all have a good week.

MR. BYRD: You too. Thanks, Judge.

THE ATTORNEYS: Thank you, Judge.

(Proceedings adjourned at 11:51:49 a.m.)

* * * * *

**C E R T I F I C A T I O N**

I, JANET D. PERSONS, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.

/s/ Janet D. Persons

JANET D. PERSONS

J&J COURT TRANSCRIBERS, INC. DATE: April 30, 2026