**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 23-51715-JAW** |
| | § | |
| **EL DORADO GAS & OIL, INC., *et al.*,**[1] | § | **CHAPTER 11** |
| | § | |
| **DEBTORS.** | § | **(Substantively Consolidated)** |
| | § | |

**TRUSTEE'S MOTION PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR THE APPROVAL OF A COMPROMISE AND SETTLEMENT WITH THE RAILROAD COMMISSION OF TEXAS**

Dawn M. Ragan (the "Trustee"), the duly appointed chapter 11 trustee for El Dorado Gas & Oil, Inc. ("El Dorado") and Hugoton Operating Company, Inc. ("Hugoton"), and in that capacity, the Independent Manager of debtor, Bluestone Natural Resources II - South Texas, LLC ("Bluestone", and together with El Dorado and Hugoton, the "Debtors"), hereby files this *Motion Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure for the Approval of a Compromise and Settlement with the Railroad Commission of Texas* (the "Motion"). In support thereof, the Trustee respectfully submits the following:

**REQUEST FOR RELIEF AND BASIS THEREOF**

1. By the Motion, the Trustee seeks entry of a proposed order, substantially in the form attached hereto: (i) approving the proposed settlement in accordance with the *Settlement Agreement* (the "Settlement Agreement"),[2] by and between the Trustee, the Railroad Commission of Texas ("RRC"), and First Service Bank ("FSB"), a copy of which is attached hereto as

---

[1] The Debtors in these substantively consolidated cases are: *In re El Dorado Gas & Oil, Inc.*, Case No. 23-51715-JAW; *In re Hugoton Operating Company, Inc.*, Case No. 23-51139-JAW; *In re Bluestone Natural Resources II - South Texas, LLC*, Case No. 24-50223-JAW; and *In re World Aircraft, Inc.*, Case No. 24-50224-JAW (collectively, the "Debtors").

[2] Capitalized terms used herein but not otherwise defined shall have the meaning given to them in the Settlement Agreement.

**Exhibit A**; (ii) authorizing the Trustee to take any and all actions and execute any and all documents necessary to effectuate the settlement, including the Settlement Agreement; and (iii) granting related relief.

2. The basis for the relief requested herein is section 105(a) of title 11 of the United (the "Bankruptcy Code"), Rules 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9019-1 of the Uniform Local Rules of the United States Bankruptcy Courts for the Northern and Southern Districts of Mississippi (the "Local Rules").

**JURISDICTION & VENUE**

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

**A. Procedural Background**

4. On August 14, 2023, Hugoton filed its voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code. On December 22, 2023, El Dorado filed its voluntary chapter 11 petition. On February 22, 2024, Bluestone, and World Aircraft, Inc. ("World Aircraft") each filed their voluntary petitions for relief under the Bankruptcy Code.

5. Ms. Ragan was appointed as the chapter 11 trustee for Hugoton and El Dorado on January 22, 2024, and February 2, 2024, respectively. On May 22, 2024, the Court authorized Ms. Ragan, as the Trustee, to serve as the Independent Manager for Bluestone and Independent Director for World Aircraft, which positions she still currently serves in.

6. On August 21, 2025, the Court ordered the substantive consolidation of El Dorado, Hugoton, World Aircraft, and Bluestone, along with non-debtor, El Dorado Oil & Gas, Inc., for

purposes of administering the Debtors' estates and distributing assets to creditors.

7. Throughout the pendency of these cases, the Trustee has attempted to market and sell all of the estate assets for maximizing distributions to creditors. Following an extensive marketing process and lack of interest in remaining oil and gas assets, the Trustee,

filed a *Notice of Intention to Abandon the Interests of Hugoton, El Dorado, and Bluestone in Certain Oil and Gas Assets* [Docket No. 1734] (the "Notice") on February 18, 2026, seeking to abandon the Debtors' estates' interests in the following assets:

- All interests in those certain oil and gas wells operated by El Dorado and located in McMullen County, TX, as more specifically identified on Schedule A attached to the Notice ("El Dorado Wells");
- All interests in those certain oil and gas wells operated by Hugoton and located in the counties of Lavaca, Matagorda, Nueces, Starr, Webb, and Zapata, TX, as more specifically identified on Schedule B attached to the Notice ("Hugoton Wells" and together with the El Dorado Wells, the "Wells");
- All interests in the oil and gas leases listed on Schedule A and Schedule B related to each of the Wells, to the extent such interest has not previously been sold pursuant to prior order(s) of this Court; and
- Any interest Bluestone has, if any, in the Wells and/or the oil and gas leases listed on Schedule A and Schedule B.

8. On March 4, 2026, the Commission filed its *Objection to Trustee's Notice of Intention to Abandon the Interests of Hugoton, El Dorado, and Bluestone in Certain Oil and Gas Assets* [Docket No. 1739] (the "Objection"). Both parties filed supplemental briefing on April 21, 2026 [Docket Nos. 1810 and 1812]. FSB filed its *Limited Statement in Support of the Notice and Objection* [Docket Nos. 1811]. A contested, evidentiary hearing was initially set for May 20, 2026. Following the RRC's emergency motion to continue the hearing and certain deadlines, the hearing was then reset to June 11 and 12, 2026.

## B. The Texas Railroad Commission Claims

9. On August 1, 2025, the RRC filed its first *Application for Allowance of*

*Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)* ("Application") asserting an administrative claim in the amount of $91,582.599.30 for estimated potential costs associated with wellbores owned by the Debtors and their estates. [Docket No. 1459]. The RRC also filed Administrative Expense Proofs of Claim in the same amounts against El Dorado [Claim No. 244] and Hugoton [Claim No. 100] (collectively, the "Proof of Claims").

10. On March 5, 2026, the RRC filed its *Amended Application for the Allowance and Payment of Administrative Expense Claim*, reducing its asserted administrative claim to $5,301.109.87 ("Amended Application") [Docket No. 1742]. The Commission did not amend its Proofs of Claim.

11. Following filing of briefs with respect to the Notice, the Trustee, the RRC and FSB engaged in settlement discussions, and subject to Court approval, have reached resolution via the proposed Settlement Agreement resolving all claims between them.

**C. Description of the Settlement**

12. The Settlement Agreement[3] provides for the following material terms:

> Transfer of Wells to Orphan Well List. The RRC and Trustee agree that on the Effective Date: (i) the Wells will be transferred by the RRC to the Orphan Well List upon the expiration of Hugoton and El Dorado Form P-5s; (ii) the Trustee will withdraw her Notice to Abandon with respect to the Wells (but not with respect to the mineral Leases), pursuant to a Notice of Withdrawal in the form attached as Exhibit B ("Withdrawal Notice"); and (iii) the Estates' interests in the Wells are terminated with all such interests reverting to the respective Debtor. The RRC does not oppose the entry of an order on the Notice to Abandon with respect to the other remaining assets and mineral Leases substantially in the form attached as Exhibit C ("Agreed Order on Notice to Abandon").
>
> Payment from Bond. Upon expiration of the P-5s held by each Debtor, and subject to the terms of the Bonds, the RRC shall call on the Bonds in the amount of $2,075,000 posted for both El Dorado and Hugoton to cover plugging costs of the Wells (the "Bonds"). The Trustee shall not seek further renewal of the P-5s or seek further extension of plugging obligations or otherwise seek to withdraw or modify the Bonds posted with the RRC; and

[3] To the extent there is any inconsistency in the description of the Settlement Agreement and the summary in this Motion, the terms and conditions of the Settlement Agreement shall control.

the Estates shall have no further liabilities with respect to the Wells following the Effective Date of this Agreement.

RRC Claims. In full satisfaction and release of any and all Claims that the RRC has asserted or could have asserted against the Debtors' Estates in connection with the Wells and any other wells listed in Debtors' Schedules and/or sold by the Trustee during the Bankruptcy Cases, the RRC shall have an allowed claim in the amount of $5,301,109.87 ("RRC Claim") against the Debtors' Estates, and shall be paid as follows: (i) $75,000 of the RRC Claim paid as an administrative expense claim, subordinated only to the pre-petition secured claim and post-petition super-priority claims of First Service Bank and those administrative expense claims of the Trustee and her professionals; (ii) the remaining amount of the RRC Claim, less application of the Bonds, shall be allowed and paid as a general unsecured claim, wherein 50% of the RRC's general unsecured claim will be subordinated to all other general unsecured claims ($1,575,554.94 general unsecured claim and $1,575,554.93 subordinated general unsecured claim); (iii) any remaining amounts of the RRC Claim not recovered from the Bonds up to $2,075,000, shall be a general unsecured claim.

The RRC Claim is not and will not be affected, released, or discharged by a chapter 11 plan or releases therein, as to the Debtors, their officers and directors, and applicable third parties, other than the Trustee and her professionals. For the avoidance of doubt, the RRC's Claim against the Debtors' Estates as described in the Settlement Agreement shall be: (i) reflected as an allowed claim pursuant to an agreed order substantially in the form attached as Exhibit D ("Agreed Order on Amended Application"); and (ii) administered through the Bankruptcy Case pursuant to the Bankruptcy Code, including pursuant to any plan and liquidating trust arising thereunder or other mechanism for payment of claims as may be approved by the Bankruptcy Court.

Releases. The RRC releases the Trustee and her professionals (collectively, the "Trustee Released Parties") from all possible claims, demands, actions, causes of action, damages, costs, expenses, and liabilities whatsoever, known or unknown, anticipated or unanticipated, suspected or unsuspected, fixed, contingent, or conditional, at law or in equity, which the RRC has, may have, or which may arise in the future, against the Trustee Released Parties arising from or in any way related to or in connection with the Debtors' Estates and wholly owned Debtor subsidiaries. For the avoidance of doubt, the foregoing release does not include any regulatory claims that have been or may be assessed by the RRC against the wholly owned, non-debtor subsidiaries of the Debtors. Mutually agreeable language will be added to the confirmation order for a chapter 11 plan that reflects that there will be no release or discharge of third-party liability for the RRC Claim, except as otherwise provided herein.

RRC releases First Service Bank, in its capacity as pre-petition secured lender and post-petition secured lender, and any participating lenders in connection with loans made to the Debtors (the "FSB Released Parties") from all possible claims, demands, actions, causes of action, damages, costs, expenses, and liabilities whatsoever, known or unknown, anticipated or unanticipated, suspected or unsuspected, fixed, contingent, or conditional, at

> law or in equity, which the RRC has, may have, or which may arise in the future, against the FSB Released Parties arising from or in any way related to or in connection with the Debtors' Estates and wholly owned Debtor subsidiaries. For the avoidance of doubt, this release does not include any regulatory claims by the RRC that have been or may be assessed against the FSB Released Parties; provided, further, however, that nothing herein shall be construed as an agreement or admission of any party as to the existence of such regulatory claims or an agreement that First Service Bank or the other FSB Released Parties are subject to the regulatory jurisdiction of the RRC.

*See* Exhibit A, Settlement Agreement, ¶¶ A-F.

## ARGUMENT AND AUTHORITIES

### *A. Standards for approving a compromise and settlement under Bankruptcy Rule 9019*

13. Rule 9019 of the Federal Rules of Bankruptcy Procedure provides that the bankruptcy court may approve a compromise or settlement on motion by the trustee after notice and a hearing. Fed. R. Bankr. P. 9019.

14. A bankruptcy court is given broad discretion under Bankruptcy Rule 9019 to determine whether to approve a proposed compromise. *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson (In re TMT Trailer Ferry, Inc.)*, 390 U.S. 414, 424 (1968). In ruling on the propriety of a compromise, the Court should determine whether the settlement is in the best interest of the bankruptcy estate. *Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortgage Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995); *In re Aweco, Inc.*, 725 F.2d. 293 (5th Cir. 1984). Bankruptcy settlements "are a normal part of the process of reorganization" and are "desirable and wise methods of bringing to a close, proceedings otherwise lengthy, complicated and costly." *Rivercity v. Herpel (In re Jackson Brewing Co.),* 624 F.2d 599, 602 (5th Cir. 1980) (quoting *Case v. Los Angeles Lumber Prods. Co.,* 308 U.S. 106, 130 (1939)).

15. The courts in this Circuit have been instructed to consider the following factors in determining whether to approve a proposed settlement:

a. the probability of success in litigation, with due consideration for the uncertainty in fact and law;

b. the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay and possible problems collecting a judgment;

c. the interests of the creditors with proper deference to their reasonable views; and

d. the extent to which the settlement is truly the product of arms-length negotiations.

*See Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop. Inc.)*, 119 F.3d 349, 355–56 (5th Cir. 1997) (internal citations omitted); s*ee also Conn. Gen. Life Ins. Co.,* 68 F.3d at 917 (the bankruptcy court must also consider the paramount interest of the creditors with proper deference to their reasonable views and consider the extent to which the settlement is the product of arms-length bargaining and not of fraud or collusion).

16. Here, the Trustee has evaluated the proposed Settlement Agreement in view of the factors under Rule 9019 and has concluded that each of the above 9019 factors are amply satisfied and that the Settlement Agreement should be approved.

***B. Analysis of the 9019 Factors***

17. Probabilities of Ultimate Success. The Trustee believes this factor supports approving the Settlement Agreement. Although the Trustee believes she would ultimately be successful in obtaining a favorable ruling abandoning the Wells and reducing, if not eliminating, the RRC's claims against the estates, she also recognizes that contested litigation inherently involve uncertainties and risk. Given the potential of appeal and associated costs, delay and uncertainty of outcome, the Trustee believes that the proposed settlement properly recognizes the present risks of litigation while also providing a net benefit to the Debtors' estates by providing for certainty and resolution with respect to disposition of the Wells and RRC claims and avoiding

costs and expenses of continued litigation.

18. Complexity, Expense, and Likely Duration. The Trustee believes that this factor supports approving the Settlement Agreement. The Trustee has and would continue to incur fees and expenses in connection with a contested hearing on abandonment, including discovery and hearing preparation. Even if successful, the potential for appeal would result in further litigation, associated costs and expenses, and delay a final determination of the issues for months if not years.

19. The Settlement Agreement, on the other hand, provides for a global resolution of all RRC issues and claims against the estates, and is a net benefit to the Debtors' estates by providing for a final resolution in a shorter time than litigation.

20. While the Trustee believes she would ultimately succeed on the merits, she also believes that approval of the Settlement Agreement is more advantageous than litigation and ultimately results in less cost and expense to the estates.

21. The Interests of Creditors. The Trustee believes that this factor supports approving the Settlement Agreement.

22. The Trustee submits that entry into the Settlement Agreement is in the best interest of creditors of the Debtors' estates. The Settlement Agreement provides for an administrative expense claim to the RRC of $75,000.00, when the asserted administrative claim amount is $5,301.109.87, and a general unsecured claim for the remaining amounts after recovery from the surety bond, half of which will be subordinated to other general unsecured creditors, with an additional unsecured claim up to $2,075,000 to the extent recovery is not obtained from the third party surety bonds. This result is certainly time and cost efficient, significantly reducing a potential administrative claim for the benefit of other creditors.

23. Arm's Length Negotiations. The negotiations between the Trustee, the RRC, and

FSB have been at arm's length, conducted in good faith, and conducted without fraud or collusion.

24. Based on the foregoing, the Trustee believes that all of the factors support the Court approving the Settlement Agreement. Therefore, the Trustee requests that the Court grant this Motion.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests the entry of an order, substantially in the form attached hereto: (i) granting the Motion; (ii) approving the proposed settlement in accordance with the Settlement Agreement by and between the Trustee, the RRC and FSB; (iii) authorizing the Trustee and RRC to take all actions and to execute any and all documents necessary to effectuate the settlement, including the Settlement Agreement; and (iv) granting related relief.

Dated: July 31, 2026

Respectfully submitted,

*/s/ R. Michael Bolen*
R. Michael Bolen (MSB No. 3615)
HOOD & BOLEN, PLLC
3770 Highway 80 West
Jackson, Mississippi 39209
Telephone: (601) 923-0788
Facsimile: (601) 922-2968
rmb@hoodbolen.com

*Counsel to Dawn M. Ragan, Chapter 11 Trustee for Hugoton Operating Company, Inc., and El Dorado Gas & Oil, Inc.*

-and-

Nancy Ribaudo
Texas Bar I.D. 13447300
Katherine T. Hopkins
Texas Bar I.D. 24070737
KELLY HART & HALLMAN LLP
201 Main St., Ste. 2500
Fort Worth, TX 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280
nancy.ribaudo@kellyhart.com
katherine.hopkins@kellyhart.com

*Counsel to Dawn M. Ragan, Chapter 11 Trustee for Hugoton Operating Company, Inc., and El Dorado Gas & Oil, Inc., and Bluestone Natural Resources II - South Texas, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing to be served on the Court's CM/ECF System on July 31, 2026.

*/s/ R. Michael Bolen*
R. Michael Bolen